**TOWN OF WISCASSET**

v.

**BOARD OF ENVIRONMENTAL PROTECTION et al.**

Supreme Judicial Court of Maine.

Argued Jan. 18, 1984.

Decided February 27, 1984.

Murray, Plumb & Murray, Peter L. Murray (orally), Jane E. Barry, Portland, for plaintiff.

James E. Tierney, Atty. Gen., Cabanne Howard (orally), Kay R.H. Evans, Asst. Attys. Gen., Augusta, for Board of Environmental Protection.

Virginia E. Davis (orally), Natural Resources Council of Maine, Augusta, for defendants.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

In order to create a waterfront park and parking lot, the Town of Wiscasset applied to the Board of Environmental Protection (the "Board") for a permit [1] to fill wetlands adjacent to the Sheepscot River near the end of the new Wiscasset-Edgecomb bridge on U.S. Route 1. This appeal involves the question of the status of that application in light of the Board's initial 4–3 vote to grant it and of its 5–5 tie vote that followed a unanimous vote to reconsider the 4–3 vote and a full public hearing on the application. In a declaratory judgment action brought by the Town,[2] the Superior Court (Lincoln County) entered judgment that the initial 4–3 decision remained in full force and effect so that the Town might proceed with

---

[1]. The permit is required by 38 M.R.S.A. §§ 473, 474 (1978 & Supp.1983–1984).

[2]. The Town's complaint in the Superior Court also contained alternative prayers for relief in the nature of review of administrative action, which that court had no occasion to reach. In view of our reversal of its declaratory judg-ment, the Superior Court on remand will have before it that part of the Town's complaint that sought judicial review of the Board's withhold-ing of the requested wetlands permit. We nei-ther express nor intimate any view on the mer-its of the Town's alternative prayers.

the project. On appeal to this court by the Board,[3] we reverse, holding that the Board violated no statutory or other legal constraint in treating its prior approval as being nullified by its own unanimous decision to reconsider and in informing the Town that the later tie vote on its application means that the project does not have the Board's approval.

Careful review of the proceedings before the Board leaves us with no doubt that the Board unanimously voted to reconsider the Town's application in full and that the Board thereafter conducted the public hearing and made its decision upon that application as an original matter, exactly as if the prior vote had never occurred. In those circumstances, the Town as the moving party could prevail on its application only by obtaining a majority vote of the Board in its favor.

The Town filed its application with the Board on February 3, 1982. At its June 23, 1982, meeting, with only seven of its ten members present, the Board voted 4–3 to approve the application. On July 12, 1982, the Natural Resources Council of Maine and the Sheepscot Valley Conservation Association filed a timely[4] petition for reconsideration of the Board's decision. On July 28, 1982, the Board, with all ten members present, voted unanimously to grant the petition for reconsideration and to post the Town's application for a public hearing. In its findings of fact and order dated the same day, the Board, acting through its chairman, Commissioner Warren,[5] found that the petition for reconsideration was timely, was filed by aggrieved parties, and met the requirements of 38 M.R.S.A. § 344(5). The Board found that the project

"is complex and controversial, and that there is new or additional evidence to be reviewed."

The Board held the public hearing on the Town's application on September 2, 1982, with all ten Board members present. Prior to September 2, Board Chairman Warren had written to the Town stating that the Board viewed the proceeding as one in which the Town, as applicant, bore the burden of proof on its application. At that hearing, in specific rejection of a protest by the Town's counsel, Chairman Warren explained that

> the legal status of the permit is that it does not exist, an appeal having been filed before the 30-day time limit following its approval, and the board having voted to reconsider its terms. Consequently, the burden of proof remains with the applicant, and you should approach the hearing as if there were no permits.... I will rule, subject to a board member moving otherwise,[6] that you're on first.

After receiving the extensive testimony and other evidence[7] presented at the September 2 public hearing, the Board, with all ten members again present, convened on November 23, 1982, to hear oral argument from the parties and to vote on the Town's application. The Board by then had before it the recommendation of its staff that the Town's application be denied. Alternative motions to grant or deny the application failed of adoption by tie votes of 5-to-5. On November 29, 1982, the Board's Chairman wrote to the Town, advising it "of action taken on November 23, 1982, by the Board of Environmental Protection on the above

---

**3.** One of the intervenors below, Natural Resources Council of Maine, also has appealed.

**4.** Petitioners had 30 days from the time the Town received the Board's decision within which to file a petition for reconsideration. *See* 38 M.R.S.A. § 344(5) (1978).

**5.** The Commissioner of Environmental Protection has been, until March 1, 1984, the Chairman and an ex officio, but nonvoting, member

of the Board of Environmental Protection. 38 M.R.S.A. § 361 (1978), amended by P.L. 1983, ch. 483, § 4 (effective March 1, 1984).

**6.** No contrary motion was made by any member of the Board, nor was any parliamentary appeal to the Board from the Chairman's ruling sought by the Town.

**7.** In all, the public hearing generated 253 pages of transcript and 23 exhibits.

referenced application." That letter informed the Town:

> Because of the tie vote, the Town does not have approval of their application, and cannot proceed with the construction of the project.

In summary, the Board adopted a procedure to be followed in its reconsideration of the Town's application: The June 23, 1982, grant of the application by a 4–3 vote was set aside, no permit thereafter existed, and the Town had the burden of proof on its application the same as on a new filing.[8] Timely notice was given the parties, including in particular the Town, of the procedure the Board was to follow in reconsidering the application. If that procedure was valid, the 5–5 tie vote of November 23, 1982, automatically meant that the Town's application failed for want of a majority of the Board voting in its favor. *See* III Legis. Rec. 971 (1976) (remarks of Senator Clifford explaining effect of a tie vote in the 10-member Board).

■ The question then becomes solely whether anything in the preexisting rules of the Board or otherwise in controlling law prohibited or was inconsistent with the Board's proceeding in the way it announced it would proceed in reconsidering the Town's application. The Board has no standing rules on the subject, and we find nothing elsewhere that casts any doubt on the validity or propriety of the Board's mode of operation in this case. In the absence of a controlling agency rule or a contrary requirement of statutory and constitutional law, the procedure adopted by an administrative agency in any particular case should receive the deferential respect of a reviewing court. *See F.C.C. v. Pottsville Broadcasting Co.,* 309 U.S. 134, 138, 60 S.Ct. 437, 439, 84 L.Ed. 656 (1940). *Cf.*

*Wisconsin v. Federal Power Commission,* 373 U.S. 294, 313–14, 83 S.Ct. 1266, 1276–77, 10 L.Ed.2d 357 (1963) (consolidation of separate proceedings); *Superior Oil Co. v. Federal Energy Regulatory Commission,* 563 F.2d 191, 200–01 (5th Cir.1977) (scope of notice and comment procedures).

■ The only law that by its terms governs petitions for reconsideration filed with the Board is 38 M.R.S.A. § 344(5), which provides in part:

> **5. Reconsideration.** Within 30 days of the applicant's receipt of a board decision, any person aggrieved by the decision may petition the Board of Environmental Protection, in writing, for correction of any part of the decision which the petitioner believes to be in error and not intended by the board, or for an opportunity to present new or additional evidence to secure reconsideration of any part of the decision or challenge any facts of which official notice was taken. . . .

> The board shall, within 30 days of receipt of such petition and after appropriate notice, grant the petition in full or in part, order a public hearing or dismiss the petition. Any public hearing held under this section shall be held within 45 days of the board's decision to hold such hearing and the commissioner shall provide reasonable notice to interested persons.

In this case the Board, acting consistently with the second of the quoted sentences, granted the petition for reconsideration in full and ordered a public hearing on the Town's application. That sentence does not explicitly declare whether reconsideration "in full," automatically and in every case, carries with it nullification of the prior decision. On the other hand, it plainly contains no prohibition against the Board's filling

---

**8.** The procedure adopted by the Board is exactly the same as that prescribed by Reed's Rules, which provides:

> A motion to reconsider, if agreed to, reopens the entire question for further action, as if there had been no final decision.

*Reed's Rules: A Manual of General Parliamentary Law* 148 (1898). *Accord Robert's Rules of*

*Order Revised* 164 (1951). Both Rule 37 of the Maine Senate and Rule 52 of the Maine House of Representatives adopt as controlling "[t]he rules of parlimentary practice comprised in Reed's Rules, or any other standard authority." *111th Legislature Senate and House Registers* 79, 153 (1983).

the procedural interstices by an *ad hoc* ruling that the prior decision is set aside.

Both the Town and the appellants miss the mark by arguing by analogy from the legal consequences that appellate courts have attached to evenly divided votes on rehearings or en banc hearings. Those appellate decisions mean nothing more than that some judicial tribunals have adopted operating principles different from those adopted by the administrative agency involved in this case. Here, the Board declared in advance that the procedure for the public hearing of September 2, 1982, and the November 23, 1982, vote would be the same as that on an original application. If the Board was not prohibited from so proceeding—as we conclude it was not—the legal consequence of the tie vote follows as a matter of course.

The Town makes no contention, and can make none, that the Board's complete reopening of the proceeding violated due process or any similar concept of procedural fairness. The Town was completely aware of the *ad hoc* procedural rule being followed by the Board. The simple fact is that after a full public hearing (which had not been held prior to the June 23 vote) before the full membership of the Board (three of whom had not been present for the June vote), the Town failed to persuade a majority of the full Board of the merit of its proposed wetlands filling.

The entry is:

Judgment of the Superior Court reversed.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.