## GULF ISLAND POND OXYGENATION PROJECT PARTNERSHIP

### v.

## BOARD OF ENVIRONMENTAL PROTECTION, et al.

Supreme Judicial Court of Maine.

Argued Jan. 28, 1994.
Decided July 22, 1994.

---

Catherine R. Connors (orally), Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, for plaintiff.

Jon H. Edwards (orally), Asst. Atty. Gen:, Augusta, for B.E.P.

Patrick J. Scully (orally), Bernstein, Shur, Sawyer & Nelson, Portland, for Town of Greene.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ., and COLLINS, A.R.J.*

CLIFFORD, Justice.

The Board of Environmental Protection (Board) and the Town of Greene (Town) appeal from a judgment entered in the Superior Court (Kennebec County, *Chandler, J.*) in favor of Gulf Island Pond Oxygenation Project Partnership (Partnership) on its complaint pursuant to M.R.Civ.P. 80C seeking review of a decision of the Board. The Board and the Town contend that the Board's denial of the Partnership's application for a property tax exemption certificate was appropriate because the Partnership failed to meet the statutory criteria for such an exemption. *See* 36 M.R.S.A. §§ 655(1)(N), 656(1)(E) (1990). We affirm the judgment of the Superior Court.

The Androscoggin River, from Ellis River to the Bath–Brunswick border, is a Class C waterway, classified pursuant to 38 M.R.S.A. § 467(1)(A) (Supp.1993). Beginning at the Gulf Island Pond in Greene, the river does not meet Class C minimum dissolved oxygen requirements (38 M.R.S.A. § 465(4)(B) (Supp.1993)) during the summer months because of oxygen-demanding waste discharged into the river. The Partnership was formed by International Paper, Boise Cascade Corporation, James River Corporation, and Central Maine Power Company. The Partnership created the Gulf Island Pond Oxygenation Project (GIPOP), and located it in Greene above the Gulf Island Dam on Gulf Island Pond in order to ameliorate the problem of insufficient oxygen; GIPOP injects oxygen into the water in Gulf Island Pond to increase the oxygen level and to cultivate biological organisms that consume oxygen-demanding material, thereby reducing the biochemical oxygen demand.

The Partnership applied to the Department of Environmental Protection (Department) to receive personal property, real property, and sales tax exemption certification pursuant to 36 M.R.S.A. §§ 655(1)(N) (personal property), 656(1)(E) (real property), & 1760(29) (1990) (sales).[1] The Commissioner denied any tax exemption certification pursuant to those sections.

---

* Justice Collins sat at oral argument and participated in the initial conference while he was a Justice, and, on order of the Chief Justice, was authorized to continue his participation in his capacity of Active Retired Justice.

1. 36 M.R.S.A. § 655(1)(N) provides in pertinent part:
   The following personal property is exempt from taxation:
   ....
   (N) Water pollution control facilities ... as defined in section 656, subsection 1, paragraph E.
   36 M.R.S.A. § 656 states in pertinent part: .
   The following real estate is exempt from taxation:
   ....
   E. Pollution control facilities.
   (1) Water pollution control facilities having a capacity to handle at least 4,000 gallons of waste per day, certified as such by the Commissioner of Environmental Protection, and all parts and accessories thereof.
   ....
   (a) "Facility" means any disposal system or any treatment works, appliance, equipment, machinery, installation or structures installed, acquired or placed in operation primarily for the purpose of reducing, controlling or eliminating water pollution caused by industrial, commercial or domestic waste.

Section 656 does not define "waste" per se, but the definition of industrial waste is identical to the definition found in section 1760. For the purposes of this statute, the waste discharged from the International Paper, Boise Cascade, and James River mills is industrial waste.
36 M.R.S.A. § 1760 states in pertinent part: No tax on sales, storage or use shall be collected upon or in connection with:
....
(29) Sales of any water pollution control facility, certified as such by the Commissioner of Environmental Protection, and any part or accessories thereof, or any materials for the construction, repair, or maintenance of a facility. As used in this subsection, unless the context otherwise indicates, the following terms have the following meanings.
....
   B. "Facility" means any disposal system or any treatment works, appliance, equipment, machinery, installation or structures installed, acquired or placed in operation primarily for the purpose of reducing, controlling or eliminating water pollution caused by industrial or other waste ...[.]
   C. "Industrial waste" means any liquid, gaseous or solid waste substance capable of polluting the waters of the State and resulting from any process, or the development of any process, of industry or manufacture.

The Partnership appealed the Commissioner's order to the Superior Court (*Alexander, J.*), which remanded the case to the Board to hear the Partnership's appeal from the Commissioner's decision. The Board found that the primary purpose of GIPOP was "to treat and reduce the organic wastes in, and being discharged into, Gulf Island Pond." Accordingly, the Board found that GIPOP was a water pollution control facility within the meaning of section 1760(29), and thus that the Partnership was exempt from sales and use tax. The Board, however, concluded that the Partnership did not qualify for property tax exemption pursuant to sections 655(1)(N) and 656(1)(E) because it reasoned that the requirement set out in 36 M.R.S.A. § 656(1)(E), that a water pollution control facility have a capacity to handle at least 4000 gallons of waste per day, could be met only if a facility treated waste *before* being discharged into the waters of the State. The Board found that GIPOP merely oxygenated water, and therefore did not handle the 4000 gallons of waste per day required by section 656(1)(E)(1) to make the Partnership eligible for exemption. Pursuant to 38 M.R.S.A. § 346 (Supp.1993) and M.R.Civ.P. 80C, the Partnership sought judicial review by the Superior Court.

The Superior Court concluded that the Board construed the exemption language too narrowly when it interpreted the "capacity to handle" requirement as mandating that waste treatment occur prior to discharge, and vacated the decision of the Board. This appeal by the Board and the Town followed.

## I.

■ The Town first contends that the Superior Court erred in remanding this matter to the Board to hear the Partnership's appeal from the Commissioner's decision. It argues that the Board lacks appellate jurisdiction over the decisions of the Commissioner denying tax exemption certificates and therefore the Board had no authority to review that decision. Pursuant to 38 M.R.S.A. § 341–D(4) (Supp.1993),[2] the Board has powers to

review "license" decisions of the Commissioner. Although section 341–D fails to provide a definition for the term "license," the Maine Administrative Procedures Act (APA) provides a definition of "license" that includes certificates. 5 M.R.S.A. § 8002(5) (1989). Because no provision in section 341–D expressly contradicts the APA definition, it applies to the statute governing the Board's jurisdictional powers. 5 M.R.S.A. § 8003 (1989). Moreover, the Board routinely reviews the Commissioner's denial of tax exemption certifications. If there is no rule, statute, or constitutional provision to the contrary, the procedure adopted by an administrative agency generally receives the deferential respect of a reviewing court. *Town of Wiscasset v. Board of Envtl. Protection*, 471 A.2d 1045, 1048 (Me.1984). In reviewing the Commissioner's denial of the Partnership's application for tax exemption, the Board was acting within its authority.

## II.

The Board and the Town challenge the Superior Court's conclusion that the Board's construction of the statutory language providing for the exemption was too narrow and urge us to defer to the Board's determination that the Partnership is not entitled to property tax exemption. On an appeal from an intermediate appellate review by the Superior Court of an administrative decision, we review the agency decision directly for an abuse of discretion, errors of law, or findings not supported by the evidence. *International Paper Co. v. Board of Envtl. Protection*, 629 A.2d 597, 599 (Me.1993).

■ At issue here is the construction of statutory language providing for personal and real property tax exemption. When construing statutes, we look to the statutory language to discern the real purpose of the legislation. *Id.* Exemptions from taxation are not to be broadly construed nor extended by application to situations not clearly within the scope of the exemption language. *Id.* at 600. Statutes providing for tax exemption, however, are entitled to a reasonable inter-

---

2. 38 M.R.S.A. § 341–D(4) (Supp.1993) states that the Board has jurisdiction to review "[f]inal license or permit decisions made by the [C]ommis-

sioner when a person aggrieved by a decision of the [C]ommissioner appeals that decision to the [B]oard ...[.]"

pretation. *Id.* "[T]he rule of strict construction of exemption statutes does not require that the narrowest possible meaning must be given to words descriptive of exemption." *Eagle Rental, Inc. v. City of Waterville,* 632 A.2d 130, 131 (Me.1993) (citations omitted).

In order for a water pollution control facility to qualify for real and personal property tax exemptions pursuant to 36 M.R.S.A. §§ 655(1)(N) and 656(1)(E), the facility must be "installed, acquired or placed in operation for the primary purpose of reducing, controlling or eliminating water pollution ...[.]" Section 656(1)(E)(1)(a); *see Statler Indus., Inc. v. Board of Envtl. Protection,* 333 A.2d 703, 706 (Me.1975). The Board found that GIPOP's primary purpose was to reduce the wastes in and being discharged into Gulf Island Pond. The parties do not dispute this finding. Therefore GIPOP is a "facility" within the meaning of section 656(1)(E)(1)(a).

Section 656(1)(E)(1) imposes an additional requirement, however. In order for a water pollution control facility to qualify as exempt from property tax, it must have a capacity to handle at least 4000 gallons of waste per day. The Board found that GIPOP failed to meet that requirement. The Board and the Town argue that the Board's factual finding that GIPOP does not handle 4000 gallons of waste per day is supported by the evidence and requires that the Board's denial of exemption from property tax be upheld.

■ This court cannot substitute its judgment for that of the Board, and we must affirm findings of fact by the Board if they are supported by substantial evidence in the record. *Aviation Oil Co. v. Department of Envtl. Protection,* 584 A.2d 611, 614 (Me. 1990); *see* 5 M.R.S.A. §§ 11007(3), (4). In this instance, however, the crucial finding by the Board that GIPOP does not handle 4000 gallons of waste per day is based on its misinterpretation of section 656(1)(E). The Board construes section 656(1)(E) as limiting exemptions from property taxes to those facilities having the capacity to handle waste *before* the waste is discharged into the water. Because the oxygenation project does not handle or treat waste prior to discharge into the Androscoggin River, but rather reduces water pollution already existing in the river, the Board concluded that GIPOP does not handle 4000 gallons of waste per day. The validity of the Board's decision and the propriety of its finding as to the lack of GIPOP's capacity to handle waste, therefore, hinges entirely on the construction of the statutory language.

■ An administrative agency's construction of a statute administered by it is given great deference. *International Paper Co.,* 629 A.2d at 600. The agency's interpretation is not binding on the court, however, and it will not be upheld if it is contradicted by the language and purpose of the statute. *See id.*

■ The Board's narrow construction of the statute is based on the definitions of "waste" in sections 1760(29)(C) and 656(1)(E)(1)(c) (industrial waste), (e) (commercial waste), and (f) (domestic waste), as a substance "capable of polluting" the waters of the state. From that language the Board concludes that the waste that a water pollution control facility must have a "capacity to handle" is limited to predischarge waste, and that the treatment of at least 4000 gallons of waste per day must occur *before* the waste is discharged into Maine's rivers. Our reading of the statute, however, leads us to agree with the Superior Court that the Board's interpretation of the statute is not supported by either the purpose or the language of the statute.

■ The purpose of the tax exemptions for water pollution control facilities is to encourage more widespread use of modern waste disposal systems and thus to improve the quality of the state's water. *International Paper Co.,* 629 A.2d at 601; *see also Ethyl Corp. v. Adams,* 375 A.2d 1065, 1076 (Me. 1977) (purpose to abate pollution). That purpose is furthered by any facility that reduces or eliminates pollution or waste already in our rivers and streams, as well as treatment facilities that reduce or treat waste before discharge. The undisputed effectiveness of the Partnership's method of reducing water pollution by oxygenation clearly fulfills the purpose of the exemption statute.

The statutory language draws no distinction between water pollution control facilities

that reduce or eliminate pollution by treating the waste before its discharge into water, and those facilities that treat waste in the water subsequent to its discharge, when the waste is in the water. Nor has judicial interpretation of the statute required waste to be treated prior to discharge. *See, e.g., Ethyl,* 375 A.2d at 1077 (refusing tax exemption for bark-oil boiler that incinerated industrial waste-bark as a means of disposal; bark did not constitute "water pollution" unless dumped in landfills and leached into nearby streams). The primary purpose of GIPOP is to treat, reduce, and eliminate actual water pollution caused by waste, a fact that places it squarely within the language and the purpose of the exemption statute. It is clear that GIPOP, in treating water pollution in Gulf Island Pond, handles on a daily basis millions of gallons of water containing waste, and therefore meets the 4000 gallons of waste per day criterion. Because it is based on an erroneous interpretation of the statute, the Board's contrary finding cannot be upheld.

### III.

■ Finally, contrary to the Town's contention, GIPOP's tax exemption certification must be retroactive to April 1, 1992. In order to qualify for property tax exemption for a particular year, an applicant must have received certification by April 1st of that year. *Connecticut Bank & Trust Co., N.A. v. City of Westbrook,* 477 A.2d 269, 272 (Me. 1984). 36 M.R.S.A. § 656(1)(E)(3) (1990) requires the Commissioner to "issue a determination regarding certification by April 1st for any air or water pollution control facility for which it has received a complete application by December 15th of the preceding year." Thus, if a successful applicant filed with the Department by December 15th and is eligible for tax exempt status, then the legislature has determined that the applicant should receive certification for the coming year. *See* Statement of Fact, L.D. 1578 (112th Legis.1985).

■ The record reflects that the application for GIPOP's tax exemption was received by the Department on December 13, 1991. Because GIPOP was entitled to property tax

exemption for its facility, the effective date of the exemption has to be April 1, 1992. To conclude otherwise would frustrate the purpose of the statute and hold an applicant responsible for property tax payments during the appeals process simply because the Commissioner and the Board made erroneous determinations.

The entry is:

Judgment affirmed.

All concurring.