STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-01-40

TOWN OF JAY, INHABITANTS
OF THE TOWN OF JAY,
SELECTMEN OF THE TOWN
OF JAY, and ASSESSORS OF
THE TOWN OF JAY,

      Petitioners

      v.

**DECISION AND ORDER**

ANDROSCOGGIN ENERGY, LLC,
and DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
COMMISSIONER OF DEPARTMENT
OF ENVIRONMENTAL PROTECTION
and BOARD OF ENVIRONMENTAL
PROTECTION,

      Respondents

DONALD L. GARBRECHT
LAW LIBRARY

SEP 3 2002

This matter is before the court on Town of Jay's 80C petition for review from a decision by the Board of Environmental Protection granting Androscoggin Energy's application for property tax exemption.

Androscoggin Energy (AE) operates a gas-fired co-generation facility in Jay, Maine. The facility produces steam, which it sells to International Paper, and electricity which it sells on the open market. AE recently acquired three used combustion turbines and three heat recovery steam generators from facilities in Wisconsin. Prior to installation, AE had the three turbines retrofitted in order to comply with state and local air quality regulations. At a cost of 3.9 million, AE replaced 24 combustors within the turbines, thereby reducing the amount of nitrogen dioxides (NOx) created in the combustion process to a range of 9 - 15 ppm, an amount adequate to allow the project to be permitted in Maine.

In January, 2000, AE applied to the Department of Environmental Protection (DEP) for Tax Exemption Certification pursuant to 36 M.R.S.A. §§ 656(1)(E)(2) and 1760(30). A certification by the DEP that a facility meets the statutory definition of an "air pollution control facility" results in an exemption from local property tax and state sales and use tax. The Town of Jay (Town) opposed the certification, requested a hearing and submitted a 9-page letter, but did not request discovery. The Commissioner of DEP granted tax exemption certification on March 31, 2000. The Town appealed and requested a public hearing, which was held on March 1, 2001. Following the hearing, the Board of Environmental Protection (BEP) denied the Town's appeal. The Town then filed this appeal, pursuant to M.R. Civ. P. 80C, in May, 2001. In August 2001, the Town filed a motion for additional evidence and discovery. AE and the BEP opposed the motion.

Also in August, the Town filed an independent action against AE (not the BEP) seeking declaratory relief. Specifically, the Town requests the court (1) identify with specificity each piece of property that is exempt from tax under 36 M.R.S.A. § 656, (2) declare that the retrofitted turbines do not constitute a "facility," and (3) declare the Town may make supplemental assessment of AE property under 36 M.R.S.A. § 713.

In September, the Town filed a motion to consolidate the 80C appeal and the declaratory judgment, alleging substantial overlap of the factual issues in both cases, and citing the need for consistent resolution of the issues presented in both cases. AE opposed the motion to consolidate, arguing that the declaratory judgment action is improper in the absence of a ripe, justiciable dispute and that consolidation would allow discovery abuses and a collateral attack on the BEP's decision, well outside the scope of an 80C appeal.

2

At oral argument on November 14, 2001, the Town withdrew the motion to consolidate. On November 16, the court denied the Town's motion for additional evidence.

"An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Bd. of Exam'r of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551. "The burden of proof rests with the party seeking to overturn the agency's decision." *Id.* (citations omitted). An administrative agency's construction of a statute administered by it is given great deference. *Gulf Island Pond Oxy. Proj. Partnership v. Board of Envtl. Protection*, 644 A.2d 1055, 1059 (Me. 1994) (citing *International Paper Co., v. Board of Envtl. Protection*, 629 A.2d 597, 600 (Me. 1993)). The agency's interpretation is not binding on the court, however, and it will not be upheld if it is contradicted by the language and purpose of the statute. *Id.*

The Town raises three central issues in its appeal. First, it contends the BEP erred in granting tax exemption to unidentified pieces and parts of a combustion system and then characterizing that system as a "facility" under the statute. Secondly, the Town claims the BEP erred in determining that the function of the collective parts is pollution control where the primary function is combustion. Lastly, the Town argues that the BEP misapplied the holding in *International Paper Co. v. Board of Envtl. Protection*, 1999 ME 135, 737 A.2d 1047 (*IP v. BEP*), when it excluded evidence of motive with regard to the equipment in question.

The statute defines facility as "any appliance, equipment, machinery, installation or structures installed, acquired or placed in operation primarily for the purpose of reducing, controlling, eliminating or disposing of industrial air pollutants." 36 M.R.S.A.

3

§ 656(1)(E)(2)(a). The Town does not address the statutory definition; it simply contends that it is unable to specifically identify the taxable unit of property for assessment purposes. In its brief, the Town refers to the mechanism in question as "equipment," a word which is expressly included in the statutory definition. In the BEP's decision it specifically lists the parts of the combustion system that contribute to NOx reduction: fuel gas skids, water injection skids, transition pieces, certain modifications to the fuel oil skids and water piping manifolds, and complete replacement of the fuel nozzles and combustor cans. Record, pp. 2-3. In *IP v. BEP*, the Law Court held that a low NOx burner system qualified as a "facility" for pollution control exemption. 1999 ME 135, ¶ 33, 737 A.2d at 1055. While the traditional idea of a "facility" conjures up an image of a self-contained site or piece of machinery, the statute seems to anticipate the microengineering of subcomponents to serve the same purpose that was once filled by a large apparatus. In light of the statutory inclusion of terms like equipment, machinery and installation and the Law Court's prior ruling on a similar device, the BEP's interpretation of a low NOx burner as a "facility" is not unreasonable.

Addressing the Town's second argument requires a look back at the case law that has developed interpreting the "primary purpose" test. The question requires the factfinder examine a piece of equipment and distinguish between "what it does" and "why it was installed." It may seem axiomatic that a piece of equipment would be installed in order to do "what it does," but the Law Court has allowed function to follow motivation for pollution control tax exemption purposes.

The Law Court first addressed this question in *Statler Industries, Inc. v. Board of Envtl. Protection*, 333 A.2d 703 (Me. 1975) where a paper mill sought tax exemption for repulping equipment. The Court held that the primary use of the equipment must be

4

for pollution control; the legislature's intent was not to provide the exemption unless pollution control was its basic function. Two years later, in *Ethyl Corp. v. Adams*, 375 A.2d 1065 (Me. 1977), the court revisited the issue, ultimately finding that the primary utilization of a bark oil burner was to dispose of waste bark and its effect on reduction of industrial air pollutants was merely incidental to its primary function as a boiler.

In an earlier IP case than the one mentioned above, the court just touched on the issue, stating that the parties had agreed that "the primary purpose of installing [the equipment] was to dispose of or eliminate wastewater treatment sludge." *International Paper Co. v. Board of Envtl. Protection*, 629 A.2d 597, 599 (Me. 1993). The main issue in that case was whether the sludge constituted water pollution under the tax exemption statute. Similarly, in *Gulf Island v. Board of Envtl. Protection*, 644 A.2d 1055 (Me. 1994), the court acknowledged that an oxygenation project on Gulf Island Pond had as its primary purpose reducing wastes in and being discharged to the pond. A separate capacity provision of the exemption statute was at issue in the case.

The most recent and ultimately most instructive case on the primary purpose test is the above mentioned *IP v. BEP (International Paper Co. v. Board of Envtl. Protection*, 1999 ME 135, 737 A.2d 1047). There the court was called upon to examine a tax exemption for two separate pollution control systems, one for elimination of chlorine and the other for reduction of nitrogen oxide release, similar to the case at hand. The court examined the primary purpose argument at length and remanded the case to the Board for consideration of the <u>purposes</u> for which the chlorine elimination system was installed, which it had failed to do after it had found the primary <u>function</u> of the system was production, not pollution abatement. The Town attempts to militate against the binding nature of this case by drawing the court's attention to the fact that it upheld a

5

decision of the BEP based on a 4-4 of the Board members vote with the deadlock broken by the decision of the Commissioner. This court has no power however, to look behind a Law Court decision to examine the foundation, however shaky the petitioner alleges it to be, underlying the conclusion of law.

From this series of cases, it appears that the court has delineated a procedure for the evaluation of pollution exemption cases - first the factfinder must determine the function (or functions) of the equipment in question. If the equipment serves more than one function, a hierarchy must be established from which the primary function may be determined. Then the factfinder must examine the motivation behind the installation of the equipment and again, if multiple motivations exist, the primary motivation must be determined. At this point in the analysis, the court turns to a simple formula -- if the primary motivation behind the installation is to reduce pollution, the equipment will qualify for exemption even if the primary function happens to be power production or incineration. If the role of pollution abatement is ranked second in both the function and motive categories, it is likely the equipment would fail to qualify for exemption. In other words, the motive factor is weighted more heavily than the function factor when the factfinder examines the purpose prong of the exemption.

An examination of the BEP decision issued on this case indicates the Board followed this analysis template very closely. Record, pp. 2-3. The BEP considered the multiple motivations and functions of AE's combustion system, found the primary function was fuel delivery and combustion and the primary motivation was reduction of an industrial air pollutant, and concluded from its review of the evidence that the

system was installed "primarily for the purpose of reducing, controlling, eliminating or disposing of industrial air pollutants." Record, p. 3.

In the third part of its appeal, the Town takes issue with the BEP's consideration of the motivation factor in the test outlined above. It argues the Board failed to include engineering fit and economic factors in the scope of its analysis. The Town claims that a beneficial financial arrangement motivated AE to purchase combustion engines that required a low NOx retrofit in order to come into compliance with state and local regulations.

The decision of the BEP indicates it considered the motivation behind the installation of the low NOx burners, rather than the motivation underpinning the entire system acquisition. It concluded there was no calculable financial benefit from the use of low NOx combustors. This analysis appears proper under the statute and the progression of Law Court decisions. While the Town is aggrieved by the idea of exempting what it refers to as an "assorted basket of parts" belonging to a larger combustion-producing whole, the BEP found that those pollution reducing parts can be characterized as a facility under the law and therefore the motivation in installing those assorted parts is the only motivation the BEP was required to consider in its exemption analysis.

The entry will be:

> The decision of the Maine Department of Environmental Protection, Board of Environmental Protection, in the matter of Androscoggin Energy, LLC, Franklin County, J. Me. Dry Low NOx Combustion System A-718-75-C-X of May 3, 2001, is AFFIRMED.

Dated: August 31, 2002

Donald H. Marden
Justice, Superior Court

7

Date Filed __5/30/01__ _____Kennebec_____ Docket No. __AP01-40_____
                              County

Action ___Petition for Review_____
                    80C

# J. MARDEN

__Town of Jay, et als__                        vs.  __Androscoggin Energy, LLC, & Dept. Enviro.__
                                                                    Protection

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Gerald F. Petrucelli, Esq. <br> 50 Monument Square <br> PO Box 9733 <br> Portland, Maine 04104-5033 | – Patrick J. Scully, Esq. (Androscoggin) <br> 100 Middle Street <br> P.O. Box 9729 <br> Portland, Maine 04104-5029 <br> – Gerald D. Reid, AAG <br> 6 State House Station <br> Augusta, Maine 04333-0006 <br><br> Jon Edwards, AAG. <br> Caol Blasi, AAG |

| Date of Entry | |
|---|---|
| 5/30/01 | Petition for Reivew of Final Agency Action M.R.Civ.P.80C, filed. s/Petrucelli, Esq. |
| 6/22/01 | Notice of Appearance of Androscoggin Energy, LLC, filed. s/Scully, Esq. |
| 6/27/01 | Certified Record, filed. s/Edwards, AAG. |
| ------- | Notice of briefing schedule mailed to attys of record. |
| | **Record in vault drawer** |
| 7/16/01 | Motion for Enlargement of Time for Petitioners to File their Brief, filed. s/J. Edwards, AAG. |
| ------- | Amended Index to Agency Record and copy of a transcript of Public Hearing (left out of agency record previously filed), filed. s/J. Edwards, AAG. |
| 7/23/01 | MOTION FOR ENLARGEMENT OF TIME TO FILE BRIEF, Marden, J. (dated 7/20/01) Motion granted. Copies mailed to attys of record. |
| 7/24/01 | Letter from attorney Scully indicating no objection to extension. |
| 8/9/01 | Supplement to Administrative Record (pages 79 A-D),filed. s/Edwards, AAG. |
| 8/17/01 | Motion for Additional Evidence and Discovery Pursuant to M.R.Civ.P. 80C(e) and (j), filed. s/Petrucelli, Esq. <br> Memorandum in Support of Motion for Additional Evidence and Discovery Pursuant to M.R.Civ.P. 80C(e) and (j), filed. s/Petrucelli, Esq. (attached exhibits A-C) <br> Request for Hearing, filed. s/Petrucelli, Esq. <br> Proposed Order, filed. |
| 9/7/01 | Respondents' Opposition to Petitiners' Motion to Take Additional Evidence and Discovery and Memorandum in Support Thereof, filed. s/Edwards, AAG |
| 9/10/01 | Memorandum of Law of Androscoggin Energy in Opposition to Petitioner Town of Jay's Motion for Additional Evidence and Discovery, filed. s/Scully, Es <br> Affidvit of Patrick J. Scully, s/Scully, Esq.   (filed 9/7/01 |

| Date of Entry | Town of Jay vs. Adroscoggin et al |
|---|---|
| | Thomas Knowlton, AAG. and David Silk, Esq. on 2/25/02. |
| | Notice of setting for _____4/30/02_____ sent to attorneys of record. |
| 4/30/02 | Hearing had on oral arguments with Hon. Justice Donald Marden, presiding. Tape 604 Index 3659-5459 Gerald Petrucelli, Esq. for the Plaintiff, Patrick Scully, Esq. for the Defendant and Carol Blasi, AAG for the State Oral arguments made to the court. Court to take matter under advisement. |
| 7/31/02 | DECISION AND ORDER, Marden, J. The decision of the Maine Department of Environmental Protection, Board of Environmental Protection, in the matter of Androscoggin Energy, LLC, Franklin County, J. Me. Dry Low NOx Combustion System A-718-75-C-X of May 3, 2001, is AFFIRMED. Copies mailed to attys. of record. |
| ------- | Copies of docket sheets and Decision and Order mailed to Garbrecht Law Library, Deoborah Firestone and Goss Data Service, Inc. |