ENTERED JAN 1 4 2015

STATE OF MAINE
CUMBERLAND, ss.

DAVID TOURANGEAU, et al,

Petitioners

v.

MAINE BOARD OF ENVIRONMENTAL
PROTECTION, et al

Respondents

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-14-37
TDW-CUM- 01-09-15

ORDER

STATE OF MAINE
Cumberland, ss, Clerk's Office

JAN 1 2 2015

RECEIVED

Before the court is a Rule 80C appeal by petitioners David Tourangeau and Marjorie Getz, representing themselves, from a June 5, 2014 decision of the Board of Environmental Protection denying their appeal from the issuance of a DEP permit allowing Janis and Paul Walsh to add a set of seasonal floats to a pier in front of their property on Foreside Road in Falmouth.

Tourangeau and Getz are neighbors of the Walshes who own a waterfront lot to the north of the Walsh property. They previously sought to appeal the DEP's approval of a prior permit issued for the Walsh pier but that appeal had been dismissed as untimely by the Board. Tourangeau and Getz had also filed an unsuccessful petition to have that permit revoked. On appeal the Superior Court (Wheeler, J.) affirmed the Board's dismissal of Tourangeau and Getz's pier appeal as untimely and also affirmed the Commissioner's decision to dismiss their petition to revoke the pier permit.

Tourangeau and Getz appealed those decisions to the Law Court, which consolidated their appeals and affirmed the decisions of the Board and of the Commissioner on August 7, 2014. *Getz v. Walsh*, 2014 ME 103, 102 A.3d 756. This appeal, therefore, does not present an

opportunity to relitigate issues relating to the pier but only issues relating to the permit for seasonal floats to be attached to the pier.

## Procedural History

The DEP granted the original permit for the Walsh pier on January 29, 2013. (R. Tab 8). On March 8, 2013 the Walshes filed an application to add floating walkways and an additional float at the end of the pier. (R. Tab 9). There is a 15 to 30 foot high bluff that runs along the shoreline of the Walsh property and from the base of the bluff to the low tide mark there are approximately 320 feet of tidal flats. (R. Tab 143 at 2-3). The pier that was the subject of the original permit extends approximately 165 feet out over the flats and included a seasonal ramp and float that extends another 35 feet. (R. Tab 8). It did not provide access to the water at low tide.

The second permit application was intended to allow the Walshes to attach a string of seasonal floats that they had previously maintained at the northern edge of their property to the end of the pier structure, thereby extending their access to the water another 120 feet to just beyond the mean low water mark. (R. Tab 9; R. Tab 143 at 3).

Tourangeau and Getz were given notice of the March 8, 2013 permit application and submitted comments raising various concerns. The DEP issued the permit on October 2, 2013 (R. Tab 61), and Tourangeau and Getz filed a timely appeal to the Board of Environmental Protection pursuant to 38 M.R.S. § 341-D(4) and 06-096 C.M.R. ch. 2 § 24. (R. Tab 68). In their appeal Tourangeau and Getz requested a hearing and also requested that certain supplemental evidence be included in the record. (*Id.* at 1). See 06-096 C.M.R. ch. 2 § 24(A).

2

In a ruling issued on December 30, 2013 (R. Tab 96 at 2), the Board Chair denied certain of Tourangeau's requests to include supplemental evidence in the record on the grounds that with the exercise of due diligence, the proposed evidence could have been brought to the attention of the Department before it issued the permit in question. *See* 06-096 C.M.R. ch. 2 § 24(D)(2). The Board Chair allowed the inclusion of supplemental evidence consisting of evidence in the Department's file relating to the first permit application for the pier. (R. Tab 96 at 2-3).[1]

The Board considered the appeal by Tourangeau and Getz at a June 5, 2014 meeting. (R. Tab. 139). Tourangeau and Getz were informed that they would have an opportunity to present oral argument on their appeal. (*Id.*).

At the June 5 meeting, after oral argument and deliberations, the Board unanimously voted to deny the appeal by Tourangeau and Getz and adopted an order affirming the Department's decision to issue the permit allowing the Walshes to attach the additional floats at the end of their existing pier structure. (R. Tab 142). The Board's order addressed the appellants' request for a public hearing but noted that such a hearing is discretionary under 38 M.R.S. § 341-D(4) and concluded that the evidentiary record was sufficiently developed and that a public hearing was not warranted. (R. Tab 143 at 4).

Tourangeau and Getz then appealed to this court.

Petitioners' Request to Supplement the Record under Rule 80C(f)

After they filed their appeal to this court, Tourangeau and Getz filed a motion to supplement the record under Rule 80C(f). That motion is opposed by counsel for the Board and counsel for the Walshes.

---

[1] Tourangeau and Getz argued, inter alia, that some of the evidence in the Department's initial permit file showed that Paul Walsh had made false statements to the Department. (R. Tab 68).

The court concludes that only one of the items which petitioners seek to add should appropriately be made part of the record – a December 31, 2013 email from Getz objecting to any role by Assistant Attorney General Thomas Harnett in advising the Board.[2] The other items were not contained in the record before the Department on the second permit application, and Rule 80C(f) does not allow parties to offer evidence that was not part of the record.[3]

Standard of Review

In reviewing decisions of the Board of Environmental Protection, the Board is accorded substantial deference in interpreting and applying environmental statutes and rules. *S.D. Warren Co. v. Board of Environmental Protection*, 2005 ME 27 ¶¶ 5-6, 868 A.2d 210 (noting Board's greater expertise in environmental matters and greater experience in interpreting environmental statutes). This deference extends to procedural decisions made by the Board. *Town of Wiscasset v. Board of Environmental Protection*, 471 A.2d 1045, 1048 (Me. 1984).

The court reviews Board decisions "for errors of law, abuse of discretion, or findings of fact not supported by the record." *Friends of Lincoln Lakes v. Board of Environmental Protection*, 2010 ME 18 ¶ 12, 989 A.2d 1128, quoting *Save Our Sebasticook Inc. v. Board of Environmental Protection*, 2007 ME 102 ¶ 13, 928 A.2d 736. The court must affirm factual findings if those findings are supported by competent evidence in the record, even if the record also contains contrary evidence. *Friends of Lincoln Lakes v. Board of Environmental Protection*, 2010 ME 18 ¶¶ 13-14. The court is not entitled to second-guess the Board even if the court would have weighed the evidence differently.

---

[2] This is identified as "Supplementary Record 1" in the attachment to petitioners' motion.
[3] Tourangeau and Getz did not file a motion for the taking of additional evidence pursuant to Rule 80C(e).

4

Petitioners' Arguments

1. Refusal to Hear Evidence: Petitioners first argue that the Board refused to hear certain evidence that the Board Chair has previously allowed to be made part of the record in his December 30, 2013 ruling that the evidence in the Department file relating to the licensing of the Walsh pier application could be made part of the record.

There are two problems with this argument. This first is that petitioners' argument relies on what they refer to as Exhibit B to the petition, which purports to be a transcript or recording of the June 5, 2014 Board Meeting. However, there is no Exhibit B to the petition, and no transcript or recording of the June 5, 2014 meeting is contained in the administrative record. Petitioners have thus failed to preserve any issues with respect to the conduct of the June 5, 2014 Board meeting.

The second problem is that the June 5, 2014 Board meeting was not an adjudicatory hearing at which evidence was introduced but rather consisted of oral argument on petitioners' appeal. The evidence from the initial pier application that the Board chair had allowed into the record remained part of the record before the Board and remains part of the record before this court. *See, e.g.,* R. Tabs 1-8. If the Board Chair cut off any of the arguments made by Tourangeau and Getz at the June 5, 2014 Board meeting, this appears to have been because they were attempting to reargue whether the pier permit should have been issued.

2. Bias of Assistant Attorney General: Petitioners argue that the Board decision was infected by bias because the Board was advised by AAG Thomas Harnett, who was simultaneously representing the Board and the Department in *Getz v. Walsh*.

5

First of all, while Getz raised that issue in a December 31, 2013 email to Harnett and DEP staff, it does not appear that she or Tourangeau subsequently preserved that issue before the Board by objecting at the June 5, 2014 hearing.

Second, the decision on Tourangeau and Getz's appeal was not made by AAG Harnett but was made by the Board, and Tourangeau and Getz have not offered any contention or evidence that the Board was biased against them.

Third, petitioners misunderstand the role of the Attorney General's office in advising state agencies and in representing them in court proceedings. The Law Court has recognized the unique role of the Attorney General's office and has noted that the Attorney General's office is not subject to the same conflict of interest rules applicable to private lawyers. *Superintendent of Insurance v. Attorney General*, 558 A.2d 1197, 1202-03 (Me. 1989). Moreover, the AG's office does not have an interest in whether petitioners' appeal would be granted or denied or whether the Walshes should be allowed to add floats to their pier. Rather the role of the Attorney General's office is to advise the agency on legal issues and then to defend the agency decision in court – regardless of what the agency may decide. *See Pond View Inc. v. Board of Environmental Protection*, Docket No. AP-07-40, Kennebec Superior Ct., Decision and order filed January 28, 2009 (Jabar, J.), reported at 2009 WL 6038637 (rejecting argument that same AAG could not advise both the DEP and the Board on a pending matter).[4]

Petitioners do not argue – nor could they – that the Board was barred from considering their appeal from the Walsh float permit even though, while that appeal was pending, petitioners and the Board were opposing each other in court proceedings brought by petitioners to challenge

---

[4] It bears emphasis, however, that in this case the record does not indicate that AAG Harnett advised the Department as well as the Board. The documents in the record show that AAG Harnett received submissions to the Board and was involved in the scheduling of the appeal to the Board but do not reflect that AAG Harnett provided advice to the Department.

6

the initial pier permit. If the Board itself was not barred from considering the float appeal while opposing petitioners in court on the pier appeal, the court cannot see how the Board's legal representative would be barred from participating as a legal advisor on the float appeal just because he was representing the Board on the pier appeal.[5]

Finally, while petitioners suggest that AAG Harnett evidenced bias against them by whispering to the Board Chair during their oral argument, the only record support they cite for that is the nonexistent Exhibit B to the petition. Assuming that there was some consultation between AAG Harnett and the Board Chair during petitioners' argument, that does not establish bias.

3. Refusal to Adhere to Precedent: Petitioners argue that the Board was required to deny a permit because it denied a permit in a prior case that the petitioners contend was similar. The short answer to this argument is that prior grants or denials of permits do not have precedential effect, and each permit application has to be judged on its own facts.

4. Wetland and Waterbodies Protection Rules: Petitioners contend that section 5(A) of the Wetland Protection Rules, 06-096 C.M.R. ch. 310 § 5(A), required the DEP and the Board to find that a project's impact is unreasonable if there is any loss of wetland area and there is a practicable alternative that would be less damaging to the environment. The Law Court, however, has expressly ruled that section 5(A) "is not an independent criterion, but is only a

---

[5] Tourangeau and Getz argue that a different AAG should have been assigned to advise the Board on the second appeal, citing *Mallinckrodt LLC v. Littell*, 616 F.Supp.2d 128, 142-43 (D.Me. 2009). In *Mallinckrodt*, however, there was an adjudicatory hearing at which the Department staff (as prosecutor) was represented by an AAG and a different AAG advised the Board. See 616 F.Supp.2d at 133, 141-42. In this case there was no adjudicatory hearing, and in any event it appears that AAG Harnett's only role was to advise the Board.

factor to be considered by the Board, and an applicant's failure to comply with [section 5(A)] . . . does not compel a determination that a project's impact on a protected natural resource would be unreasonable." *Uliano v. Board of Environmental Protection*, 2005 ME 88 ¶ 12, 876 A.2d 16.

5. Alleged False Statements about Practicable Alternatives: Petitioners contend that the Board failed to consider allegedly false statements by Walsh with respect to the use of Handy Boat facilities as a practicable alternative. The Board's order demonstrates that the Board considered petitioners' arguments that the Walshes made false or misleading statements. (R. Tab 143, page 3 ¶ 4(B). On this issue, while petitioners rely in part on the nonexistent Exhibit B, the essence of their argument is that the Board failed to correctly weigh the evidence when it found that the use of Handy Boat was not a practicable alternative. *See* Board Order, R. Tab 143 ¶ 7 at page 8. However, an agency does not act arbitrarily when it disagrees with evidence submitted by one party and chooses to rely on evidence submitted by another party. *Kroeger v. Department of Environmental Protection*, 2005 ME 50 ¶ 21, 870 A.2d 566.

Even if it were inclined to do so, the court cannot substitute its judgment for that of the agency on this issue when there is evidence to support the agency finding. *See* R. Tab 51 (Walshes were informed that there would be no space for their Zodiac at Handy Boat).

6. Alleged Failure to Demonstrate Need: Petitioners argue that the Walshes failed to demonstrate a private need for the proposed alteration, citing 06-096 C.M.R. ch. 310 § 9(A)(4). This is true, petitioners contend, because by obtaining the original pier permit, the Walshes implicitly conceded that the pier alone would allow reasonable access. However, the Board was entitled to credit the Walshes' statement that they had not realized that attaching the string of

seasonal floats they had previously maintained to the end of their pier would require a separate NRPA permit. R. Tab 98 at 2-3.

7. <u>Legislative Statement of Purpose</u>: Citing the legislative statement of purpose in 38 M.R.S. § 480-A, petitioners argue that the Board failed to follow the legislative statement of purpose that cumulative effects of minor alterations and occasional major alterations pose a substantial threat to the environment.

Carried to its logical extreme, this argument would mean that no permit could ever be issued that involved any minor effect on a protected area. This is not the law. The touchstone of the agency's inquiry under 38 M.R.S. § 480-D is reasonableness, *Uliano v. Board of Environmental Protection*, 2005 ME 88 ¶ 12. In this case the Board considered all of the relevant standards and concluded:

> [I]mpacts to the coastal wetland from the structures resting on the sandy substrate and from shading are minimal, indirect impacts. Because these structures are removed seasonally and most often float in tidal waters, their potential impacts are even further diminished . . . . The project is consistent with and does not detract from the existing uses and the scenic quality of the shoreline. Based on the evidence, the Board finds that the project will not result in any measurable loss of wetland area, functions, or values.

R. Tab 143 at 8-9. There is evidence in the record to support the Board's findings.[6]

---

[6] Petitioners also argue that the Board considered evidence that was not in the record, but their arguments on this issue demonstrate that they are really disagreeing with the Board's decision to accept evidence with which petitioners disagreed. For example, while petitioners contest the Board's finding that the project is consistent with the existing uses of the shoreline in that area (R. Tab 143 at 6), maps in the record demonstrate that there are nine piers along that stretch of shoreline. *See* R. Tab 129 (second map, correcting map presented by petitioners).

The entry shall be:

The June 5, 2014 decision of the Board of Environmental Protection is affirmed. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).


Dated: January 9, 2015

Thomas D. Warren
Justice, Superior Court

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

DAVID TOURANGEAU
33 OLD POWERHOUSE ROAD
FALMOUTH ME 04105

Petitioner

CLERK OF COURTS
Cumberland County
205 Newbury Street, Ground Floor
Portland, ME 04101

MARY COSTIGAN ESQ
BERNSTEIN SHUR SAWYER & NELSON
PO BOX 9729
PORTLAND ME 04104-5029

Respondent's
Attorney