2001 ME 45

**MARITIME ENERGY,**

v.

**FUND INSURANCE REVIEW BOARD.**

Supreme Judicial Court of Maine.

Argued: Jan. 10, 2001.
Decided: March 5, 2001.

Bruce C. Gerrity, Esq., (orally), Ann R. Robinson, Esq., Sigmund D. Shutz, Esq., Preti Flaherty Beliveau Pachios & Haley, LLC, Portland, for plaintiff.

G. Steven Rowe, Attorney General, Mary M. Sauer, Asst. Attorney General, (orally), Augusta, for defendant.

Jamie Py, Esq., Maine Oil Dealers Association, Brunswick, for amicus curiae.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Maritime Energy appeals from a judgment entered in the Superior Court (Waldo County, *Pierson, J.*) affirming the decision of the Fund Insurance Review Board that Maritime is not eligible for reimbursement from the Ground Water Oil Clean-up Fund for its costs of cleaning up gasoline discharge. Maritime contends that the Board misconstrued the language of the statute creating the Fund when it concluded that Maritime was not entitled

to reimbursement for clean-up costs following its discovery in 1998 of gasoline-contaminated soil because the discharge causing the contamination had been discovered prior to 1990. We disagree with Maritime and affirm the judgment.

[¶ 2] Maritime Energy is an installer of underground storage tanks. In November of 1986, Maritime Energy installed three underground gasoline storage tanks at the B & L Market in Belmont. A gasoline leak from one of the tanks caused by a cracked seam weld was discovered in March of 1987. The offending tank was removed and replaced, and contaminated soil surrounding the tank was removed. The other two tanks were left undisturbed.

[¶ 3] In September of 1998, during unrelated repairs, Maritime found gasoline contamination at the same site as the 1987 leak. Soil analysis showed that this contamination was caused by a pre–1990 blend of gasoline. The evidence in the record shows, and Maritime does not dispute, that the contaminations discovered in 1987 and 1998 were both the result of the leak from the same cracked seam weld in the tank that was replaced in 1987. Clean-up of the contamination discovered in 1998 then ensued.

[¶ 4] On March 29, 1999, pursuant to the Underground Oil Storage Facilities and Ground Water Protection Act, 38 M.R.S.A. §§ 561–570–L (2001), Maritime submitted an application to the Maine Department of Environmental Protection requesting coverage from the Ground Water Oil Clean-up Fund for its 1998 clean-up costs. The Fund was established by statute in part to reimburse owners and operators of petroleum product storage tanks for the costs of contamination clean-up and remediation. 38 M.R.S.A. § 569–A(8)(B) (2001). To collect from the Fund, a party who discovers contamination must submit a written application to the Department of Environmental Protection, which then issues an order determining the party's eligibility for Fund coverage. 38 M.R.S.A. § 568–A(1)(A), (F) (2001). "An applicant is not eligible for coverage for any discharge discovered on or before April 1, 1990." 38 M.R.S.A. § 568–A(1)(B–1) (2001). The Fund Insurance Review Board is a statutory board independent from the Department that decides appeals from Department decisions, including those regarding Fund coverage. 38 M.R.S.A. §§ 568–A(3–A), 568–B (2001).

[¶ 5] Maritime's application was denied by the Department based on its determination that the source of the contamination discovered in 1998 was the same as that discharge discovered in 1987. Maritime appealed the Department's denial of coverage to the Fund Insurance Review Board pursuant to 38 M.R.S.A. § 568–A(3–A) (2001).[1] Maritime's position was and still is, that the source of the discharge was irrelevant to the date of its discovery. The Board affirmed the decision of the Department, finding that "the pre–1990 blend gasoline contamination discovered in 1998 following tank removal is the same discharge that was discovered in 1987. Because it is the same discharge, and the discharge was discovered in 1987, Maritime Energy is ineligible for Fund coverage under the language of Section 568–A(1)(B–1)." The Superior Court affirmed the decision of the Board to deny coverage to Maritime. Maritime's appeal to this Court followed.

[¶ 6] At the heart of this appeal is a question of statutory construction, and particularly, the interpretation to be given to one sentence: "An applicant is not eligible for coverage for any discharge discovered on or before April 1, 1990." 38 M.R.S.A. § 568–A(1)(B–1) (2001). "Discharge" is defined in the statute as "any spilling, leaking, pumping, pouring, emitting, escaping, emptying or dumping." 38 M.R.S.A. § 562–A(6) (2001). The crux of

---

1. "An applicant aggrieved by an insurance claims-related decision of the commissioner, including but not limited to decisions on eligibility for coverage … may appeal that decision to the Fund Insurance Review Board." 38 M.R.S.A. § 568–A(3–A) (2001).

Maritime's argument is that the 1998 discovery was separate and distinct from the 1987 discovery regardless of the fact that they both resulted from the same leak, and therefore it is entitled to Fund coverage for the 1998 discovery.

[¶ 7] When, as in this case, the Superior Court acts in its appellate capacity, we review directly the decision of the Board for abuse of discretion, errors of law, or findings not supported by the evidence. *Downeast Energy Corp. v. Fund Ins. Review Bd.*, 2000 ME 151, ¶ 13, 756 A.2d 948, 951. An agency's findings of fact should be upheld unless clearly erroneous. *Centamore v. Dep't of Human Servs.*, 664 A.2d 369, 371 (Me.1995). Furthermore, "When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive, is entitled to great deference and will be upheld 'unless the statute plainly compels a contrary result.'" *Wood v. Superintendent of Ins.*, 638 A.2d 67, 70 (Me.1994) (quoting *Abbott v. Comm'r of Inland Fisheries and Wildlife*, 623 A.2d 1273, 1275 (Me.1993)).

[¶ 8] Maritime contends that the Board's decision in this case is not entitled to deference because: (1) statutory interpretation of the Act is beyond the expertise of the Board, and (2) the statute unambiguously requires coverage for Maritime, and only when a statute is ambiguous is the Board's construction of the statute it administers entitled to deference. *See Guilford Transp. Indus. v. Pub. Util. Comm'n*, 2000 ME 31, ¶ 11, 746 A.2d 910, 913. We disagree.

[¶ 9] Maritime relies on *LeBlanc v. United Eng'rs & Constructors Inc.*, 584 A.2d 675 (Me.1991), in which we held that a Workers' Compensation Commission interpretation of federal constitutional matters was not entitled to deference because the subject matter was beyond the scope of its expertise. *LeBlanc*, 584 A.2d at 677. In this case, the Board applied its expertise in interpreting the Underground Oil Storage Facilities and Ground Water Protection Act. Because we are reviewing the Board's construction of the very statute it is charged with administering, and because its expertise in the field of contamination from storage tanks was applicable, the Board's interpretation is entitled to deference.[2]

[¶ 10] Moreover, the statutory provision at issue in this case is ambiguous as to whether discovery of additional contamination from a previously discovered gasoline discharge can result in Fund coverage under the Act. Accordingly, the Board's determination is entitled to deference as long as its construction of the statute is a reasonable one. *See Guilford Transp. Indus.*, 2000 ME 31, ¶ 11, 746 A.2d at 913. The Board's determination that the eligibility date bars coverage for Maritime's expenses is a reasonable one, and the language of the statute does not compel a contrary result. By inserting the definition of discharge into the statutory section, that section would read, "An applicant is not eligible for coverage for any spilling, leaking, pumping, pouring, emitting, escaping, emptying or dumping discovered on or before April 1, 1990." 38 M.R.S.A. §§ 562–A(6), 568–A(1)(B–1) (2001). Contamination from a leak caused by a cracked tank was discovered in 1987. The cracked tank was replaced in 1987. The other two tanks remained undamaged. There is no evidence to suggest, therefore, that the 1998 discovery was of a discharge from any source other than the cracked tank that was removed in 1987. Thus, the spilling, leaking, or emitting that is the subject of this dispute occurred and was discovered in 1987, three years prior to Fund coverage eligibility. The 1998 discovery was not a discovery of a new discharge, as the statute requires. The

---

2. Maritime also argues that because the Board is composed of lay members, its interpretation of the Act is not entitled to deference. We are not persuaded by this argument.

Board's determination that Maritime is ineligible for Fund coverage for the contamination discovered in 1998 because it was from the same discharge that was actually discovered in 1987, three years prior to Fund coverage eligibility, is therefore not clear error.

The entry is:

Judgment affirmed.