2006 ME 37

**Stanley WHITNEY**

v.

**WAL–MART STORES, INC.**

Supreme Judicial Court of Maine.

Argued: Sept. 14, 2005.
Decided: April 11, 2006.

Curtis Webber, Esq. (orally), Linnell, Choate & Webber, LLP, Auburn, for plaintiff.

Mark V. Franco, Esq., Elizabeth K. Peck, Esq. (orally), Lisa F. Bendetson, Esq., Thompson & Bowie, LLP, Portland, for defendant.

James R. Erwin, Esq. (orally), Katherine I. Rand, Esq., Pierce Atwood, Philip J. Moss, Esq., Eric J. Uhl, Esq., Moon, Moss & Shapiro, P.A., Portland, (for Maine State Chamber of Commerce and nine other organizations), John P. Gause, Esq., Disability Rights Center, David G. Webbert, Esq. (orally), Johnson & Webbert, LLP, Augusta, (for Maine AFL–CIO and one other organization), for amici curiae.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

Majority: DANA, ALEXANDER, CALKINS, and SILVER, JJ.

Dissent: SAUFLEY, C.J., and CLIFFORD, and LEVY, JJ.

Dissent: SAUFLEY, C.J., and LEVY, JJ.

### ALEXANDER, J.

[¶ 1] This case is before us on questions certified by the United States District Court for the District of Maine (*Hornby, J.*) pursuant to 4 M.R.S. § 57 (2005) and M.R.App. P. 25. The questions of state law certified are: (1) "Does the Maine Human Rights Act definition of 'physical or mental disability' found at 5 M.R.S.A. § 4553(7–A) require a showing of a substantial limitation on a major life activity as does its federal analogue, 42 U.S.C. § 12102(2)(A)?"; and (2) "Is Section 3.02(C) of the regulations adopted by the Maine Human Rights Commission, defining a 'physical or mental impairment,' invalid because it requires a showing of a substantial limitation on a major life activity?" *See Whitney v. Wal–Mart Stores, Inc.*, 370 F.Supp.2d 323, 327 (D.Me.2005). We answer the federal court's first question in the negative, and the second question in the affirmative.

### I. CASE HISTORY

[¶ 2] In its certification, the District Court has determined that the following facts are undisputed. *Id.* at 324–27. In 1998, Wal–Mart hired Stanley Whitney to work at a store location in Florida. In 2001, Whitney was offered and accepted a salaried management-level position in Maine as tire-lube express department manager at the Wal–Mart store in North Windham. In that position, he worked an average of six days and more than seventy hours per week.

[¶ 3] Soon after starting work in Maine, Whitney's health began to deteriorate. He was diagnosed with high blood pressure and "possibly serious" heart disease. Whitney requested and was granted a two-month leave of absence for further testing

of his condition. When he returned to his position, Whitney had a note from his physician's assistant indicating that he should be allowed to work reduced work hours of no more than eight hours per day and forty hours per week with two consecutive days off. Whitney later amended his requested hours to work nine hours per day with two consecutive days off, and no more than forty-five hours per week.

[¶ 4] Whitney's supervisors informed him that his minimum work hours as the tire-lube manager in the North Windham store would be forty-eight to fifty-two hours per week. Wal–Mart also notified Whitney that if he could not work these minimum hours, other non-salaried department manager positions could be available to him. Whitney applied unsuccessfully for several other managerial positions before eventually accepting a position as a non-salaried department manager at the Scarborough Wal–Mart, where he continues to work.

[¶ 5] In January 2004, Whitney filed a complaint, later amended, in the Superior Court (Androscoggin County) alleging age and disability discrimination by Wal–Mart in violation of the Maine Human Rights Act (MHRA), 5 M.R.S.A. §§ 4551–4634 (2002), as well as breach of his employment contract. He requested injunctive relief in the form of reinstatement to his former management position in North Windham, and damages. Wal–Mart removed the case to the United States District Court, asserting diversity of citizenship.

[¶ 6] Once in federal court, Wal–Mart moved for summary judgment. The magistrate judge (*Kravchuk, J.*) issued a recommended decision that Wal–Mart's motion for summary judgment be granted as to all counts. The recommended decision was based, in part, on the conclusion that Maine's disability discrimination law does not provide a remedy unless the plaintiff can establish that the disability substantially limits a major life activity, consistent with the federal Americans with Disabilities Act, 42 U.S.C.A. §§ 12101–12213 (West 2005), and that because Whitney failed to establish a prima facie case of such a substantial limitation, Wal–Mart was entitled to summary judgment. Following the recommended decision, the District Court (*Hornby, J.*) certified the case for our interpretation of Maine law pursuant to 4 M.R.S. § 57 and M.R.App. P. 25.

## II. LEGAL ANALYSIS

### A. Jurisdiction

[¶ 7] We have jurisdiction to consider certified questions of State law posed by a federal court when such questions "may be determinative of the cause," and when "there are no clear controlling precedents in the decisions of the Supreme Judicial Court." 4 M.R.S. § 57; M.R.App. P. 25(a). The District Court has certified that our determination of the questions posed may be dispositive of the action pending before the District Court by entry of a summary judgment, and that no controlling precedents otherwise exist. Thus, our exercise of jurisdiction in this matter is proper.

### B. The Maine Human Rights Act

[¶ 8] The MHRA was enacted in 1971 to acknowledge "the basic human right to a life with dignity" by preventing discrimination in "employment, housing or access to public accommodations" as well as in the extension of credit and in education. 5 M.R.S. § 4552 (2005). One of the claims brought by Whitney against Wal–Mart— and the only claim relevant to the questions before us—is a cause of action for disability discrimination pursuant to 5 M.R.S. § 4572 (2005).

[¶ 9] An employee plaintiff pursuing a claim for disability discrimination must establish that "first, [he] suffers from a disability; second, [he] is otherwise qualified, with or without reasonable accommodations, and is able to perform the essential functions of the job; and third, [he] was adversely treated by the employer based in whole or in part on [his] disability." *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 14, 824 A.2d 48, 54.

[¶ 10] When the MHRA was enacted in 1971, it included no definition of "disability" or the similar term "handicap." Congress adopted a definition of "disability" or "handicap" in the Rehabilitation Act of 1973 when it defined "handicapped individual" as a person who "has a physical or mental impairment which substantially limits one or more of such person's major life activities ...." P.L. 93–516, § 111(a), 88 Stat. 1617, 1619 (1974) (codified at 29 U.S.C.A. § 705(20)(B)(i) (West 1999)).

[¶ 11] Shortly after enactment of the Rehabilitation Act, the Maine Legislature added a definition of "physical or mental handicap" to the MHRA, P.L.1975, ch. 358, § 2. Our Legislature chose not to include in the definition the "substantially limits ... major life activities" restriction of its recently adopted federal counterpart. Instead the Legislature enacted 5 M.R.S.A. § 4553(7–A) largely as it reads today. As originally enacted, 5 M.R.S.A. § 4553(7–A) read as follows:

> Physical or mental handicap. "Physical or mental handicap" means any disability, infirmity, malformation, disfigurement, congenital defect or mental condition caused by bodily injury, accident, disease, birth defect, environmental conditions or illness; and also includes the physical or mental condition of a person which constitutes a substantial handicap as determined by a physician or, in the case of mental handicap, by a psychia-

trist or psychologist, as well as any other health or sensory impairment which requires special education, vocational rehabilitation or related services.

P.L.1975, ch. 358, § 2 (codified at 5 M.R.S.A. § 4553(7–A) (1979)).

[¶ 12] This provision remained unchanged until 1991. *See* P.L.1991, ch. 99, § 2. At that time, the Legislature made what it characterized as stylistic changes that included changing the word "handicap" to "disability." *See* L.D. 191, Statement of Fact (115th Legis.1991) ("This bill does not change the substance of the Maine Human Rights Act, but changes the terminology from handicap to disability.").

[¶ 13] The 1991 amendment, shown as follows, adopted the definition of disability in section 4553(7–A) that exists today:

> Physical or mental disability. "Physical or mental ~~handicap~~ *disability* " means any disability, infirmity, malformation, disfigurement, congenital defect or mental condition caused by bodily injury, accident, disease, birth defect, environmental conditions or illness~~;~~, and ~~also~~ includes the physical or mental condition of a person ~~which~~ *that* constitutes a substantial ~~handicap~~ *disability* as determined by a physician or, in the case of mental ~~handicap~~ *disability* by a psychiatrist or psychologist, as well as any other health or sensory impairment ~~which~~ *that* requires special education, vocational rehabilitation or related services.

P.L.1991, ch. 99, § 2.

[¶ 14] With these nonsubstantive amendments, section 4553(7–A) now defines physical or mental disability as:

> any disability, infirmity, malformation, disfigurement, congenital defect or mental condition caused by bodily injury, accident, disease, birth defect, environmental conditions or illness, and includes the physical or mental condition of a

person that constitutes a substantial disability as determined by a physician or, in the case of mental disability, by a psychiatrist or psychologist, as well as any other health or sensory impairment that requires special education, vocational rehabilitation or related services.

5 M.R.S. § 4553(7–A) (2005).

[¶ 15] When the Legislature acted in 1991, the less-inclusive Rehabilitation Act definition had been in effect for more than seventeen years. In 1990, the year before section 4553(7–A) was amended, Congress adopted the Americans with Disabilities Act with a definition of disability similar to that in the Rehabilitation Act, "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." Pub.L. 101–336, § 3(2)(A), 104 Stat. 328, 330 (1990) (codified at 42 U.S.C.A. § 12102(2)(A) (West 2005)).[1] Legislative enactment of section 4553(7–A) without the "substantially limits ... major life activities" language, a year after Congress originally adopted the Rehabilitation Act, and legislative amendment of section 4553(7–A) without the restrictive language, a year after such language was included in the enactment of the ADA are strongly probative of legislative rejection, not adoption, of the restrictive language.

[¶ 16] Prior to the 1991 legislation, the Maine Human Rights Commission, in 1985, had adopted some regulations to guide its enforcement activities. Among the regulations adopted by the Commission was Rule 3.02, that provides further definitions to accompany the MHRA. Included among these definitions is one for "physical or mental disability" that states: "An applicant or employee who has a 'physical or mental disability' means any person who has a physical or mental impairment which substantially limits one or more of such person's major life activities, has a record of such impairment, or is regarded as having such impairment." 11 C.M.R. 94 348 003–2 § 3.02(C)(1) (1999).

C. Applicability of the "Substantially Limits" Language

 [¶ 17] Wal–Mart and the Maine Chamber of Commerce argue that the Legislature's 1991 amendment signified, *sub silentio,* that the 1985 Maine Human Rights Commission regulation was a proper construction of the definition of disability that the Legislature had enacted in 1975. Nothing in the legislative history, or anywhere else, supports that view. If the stated legislative intent of the 1991 amendment was to continue and "not change the substance of the Maine Human Rights Act," then this amendment was surely neither an endorsement nor an acceptance of the restrictive language included in the Maine Human Rights Commission regulation.

[¶ 18] The reason that the Human Rights Commission's 1985 regulation cannot be viewed as receiving approval by the Legislature is quickly apparent. A year after the regulation was adopted, we held in *Rozanski v. A–P–A Transport, Inc.,* 512 A.2d 335, 340 (Me.1986) that a definition of disability, without the "substantially limits" language, should govern interpretation of the term "disability" or "handicap" under the MHRA.

[¶ 19] In *Rozanski,* plaintiffs were two truck drivers who were discharged because they failed A–P–A Transport's pre-employment x-ray screening. Although neither plaintiff had ever experienced back problems, x-rays revealed that one had a

---

1. The standards for liability are the same under the Rehabilitation Act and the Americans with Disabilities Act. *Quiles–Quiles v. Henderson,* 439 F.3d 1, 5 (1st Cir.2006); *Calero–Cerezo v. United States Dep't of Justice,* 355 F.3d 6, 11 n. 1 (1st Cir.2004).

small osteophyte or spur on his spine and the other had spondylolysis. *Id.* at 338. The Maine Human Rights Commission determined that these latent back conditions were a physical handicap pursuant to section 4553(7–A). *Id.*[2] After trial, the Superior Court determined that A–P–A Transport had discharged the plaintiffs because of a mistaken belief that their latent back conditions created a greater likelihood of disability if they engaged in the heavy work of truck driving. *Id.*

[¶ 20] A–P–A Transport argued that these latent back conditions were not a protected "physical or mental handicap" under the MHRA. We rejected this argument:

> The [Maine Human Rights] Act defines "physical or mental handicap" as "any disability, infirmity, malformation, disfigurement, congenital defect or mental condition caused by bodily injury, accident, disease, birth defect, environmental conditions or illness . . . ." 5 M.R.S.A. § 4553(7–A) (1979). Both [plaintiffs] fit within the express terms of that definition since the asymptomatic condition of each of the men constitutes a "malformation" of the spine. Their conditions are indistinguishable from that of the railway employee involved in *Maine Human Rights Commission v. Canadian Pacific Ltd.*, 458 A.2d 1225 (Me.1983), who because of his asymptomatic heart murmur was deemed to be handicapped within the meaning of the Act. Similarly, [plaintiffs'] latent back conditions, which were the sole ground for their termination, are physical handicaps that enti-

tle them to the protection of the Maine Human Rights Act.

*Id.* at 340.

[¶ 21] The *Rozanski* opinion holding that "latent" conditions are protected under the section 4553(7–A) definition, necessarily rejects the "substantially limits" qualification to the definition of disability. It was this interpretation of section 4553(7–A), by both the Maine Human Rights Commission and this Court, that governed in 1991 when the Legislature amended section 4553(7–A), without substantive change, and it is this interpretation of the law that governs today. Not surprisingly, the Chief Judge of the United States District Court has interpreted section 4553(7–A) in just this way, as having "a broader definition of 'physical or mental disability' " than the Rehabilitation Act. *Norton v. Lakeside Family Practice, P.A.*, 382 F.Supp.2d 202, 205 n. 2 (D.Me.2005).

[¶ 22] Wal–Mart asserts that, despite this history of section 4553(7–A), we should defer to the Commission's interpretation of a statute it administers. Our standards of review require that we afford significant deference to an agency's interpretation of a statute it administers: "When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive, is entitled to great deference . . . ." *Maritime Energy v. Fund Ins. Review Bd.*, 2001 ME 45, ¶ 7, 767 A.2d 812, 814. However, we must directly interpret an unambiguous statute according to its plain meaning. *City of Bangor v. Penob-*

---

**2.** It is unclear from the *Rozanski* opinion whether the 1985 regulation defining handicap or disability had been adopted when the Commission considered Rozanski's complaint. If the regulation was adopted before the Commission considered *Rozanski* and was ignored in that consideration, that suggests that the Commission did not attach much

significance to the regulation. If the regulation was adopted after *Rozanski* was considered by the Commission in an attempt to restrict the interpretation of handicap or disability, then the *Rozanski* Court's affirmance of the statutory definition, without the "substantially limits" language, effectively repudiated the regulation.

*scot County,* 2005 ME 35, ¶ 9, 868 A.2d 177, 180. If, and only if, a statute is ambiguous do we look to extrinsic sources like agency interpretation or legislative history to assist in interpreting ambiguous terms. *Competitive Energy Servs., LLC v. Pub. Utils. Comm'n,* 2003 ME 12, ¶ 15, 818 A.2d 1039, 1046. An agency interpretation of a statute is invalid if it is contrary to the plain meaning of the statute. *See Gulf Island Pond Oxygenation Project P'ship v. Bd. of Envtl. Prot.,* 644 A.2d 1055, 1059 (Me.1994).

■ [¶ 23] An agency cannot, by regulation, create an ambiguity in interpretation of a statute that does not otherwise exist. Such an approach is particularly difficult when the agency's construction seeks to add words of limitation to a statute that are inconsistent with the plain meaning of the law, legislative choice in enacting the law, and subsequent judicial interpretation.

[¶ 24] Wal–Mart argues, contrary to our holding in *Rozanski,* that the "substantially limits" language of the federal law is incorporated into section 4553(7–A) by its reference to "substantial disability." This is a misreading of the statute. The definition of "physical or mental disability" in section 4553(7–A) includes three categories of covered conditions. Under the first category, a person is covered if he or she has "any disability, infirmity, malformation, disfigurement, congenital defect or mental condition caused by bodily injury, accident, disease, birth defect, environmental conditions or illness." *Rozanski,* 512 A.2d at 340 (quoting 5 M.R.S.A. § 4553(7–A) (1979)). The second category is "the physical or mental condition of a person that constitutes a substantial disability as determined by a physician or, in the case of mental disability, by a psychiatrist or psychologist ...." 5 M.R.S. § 4553(7–A). The third category is "any other health or sensory impairment that requires special

education, vocational rehabilitation or related services." *Id.*

[¶ 25] Although it is possible for an individual to have a condition that meets all three categories, *Rozanski* establishes that meeting all of them is not a prerequisite for coverage. In *Rozanski,* an asymptomatic back condition was covered because it was a "malformation" of the spine, 512 A.2d at 340, regardless of the "substantial disability" language in section 4553(7–A).

[¶ 26] Section 4553(7–A) in defining disability is not ambiguous. It does not include the "substantially limits ... a major life activity" qualification that the Legislature has chosen not to include in Maine's definition of disability.

■ [¶ 27] Wal–Mart and the Chamber of Commerce assert, as a matter of policy, that Maine's definition of disability, without the restriction in the federal law, may promote litigation unduly burdensome to businesses. Therefore, they urge us to, in effect, amend the MHRA to include the limitation present in federal law but not in the Maine Legislature's enacted definition of "disability." We have cautioned litigants that legislative policy arguments are more appropriately left to the executive and the Legislature to resolve. In *Bertl v. Public Utilities Commission,* 2005 ME 115, ¶ 11, 885 A.2d 776, 778, we rejected an appellant's argument as:

> more of a policy argument than it is a legal argument, and as such, is more appropriately left for the Commission, not this Court, to consider. *See, e.g., Harding v. Sheridan D. Smith, Inc.,* 647 A.2d 1193, 1194 (Me.1994) (noting that "[w]hile the employer makes an interesting policy argument, such policy issues are more appropriately addressed to the Legislature").

If a legislative policy concern is valid, the appropriate body to address that concern

is the Maine Legislature, it is not to seek amendment of the law by judicial action.

[¶ 28] The entire history of the adoption and judicial interpretation of the definition of disability in the MHRA leaves no ambiguity for interpretation and supports a definition of "disability" without a "substantially limits one or more of the major life activities" qualification.

**D. Responses to Questions**

[¶ 29] Based on the above discussion, we respond to the certified questions as follows:

[¶ 30] Question # 1—Does the Maine Human Rights Act definition of "physical or mental disability" found at 5 M.R.S.A. § 4553(7–A) require a showing of a substantial limitation on a major life activity as does its federal analogue, 42 U.S.C. § 12102(2)(A)?

[¶ 31] We answer question # 1, "No."

[¶ 32] Question # 2—Is Section 3.02(C) of the regulations adopted by the Maine Human Rights Commission, defining a "physical or mental impairment," invalid because it requires a showing of a substantial limitation on a major life activity?

[¶ 33] We answer question # 2, "Yes."

CLIFFORD, J., with whom SAUFLEY, C.J., and LEVY, J., join, dissenting.

[¶ 34] The Court concludes that the definition of "physical or mental disability" in section 4553(7–A) of the Maine Human Rights Act (MHRA), 5 M.R.S. §§ 4551–4634 (2005), is unambiguous and does not require a plaintiff pursuing a disability discrimination complaint to prove that the disability substantially limits a major life activity, as does its federal counterpart, the Americans with Disabilities Act (ADA), 42 U.S.C.A. §§ 12101–12213 (West 2005). In my view, however, section 4553(7–A) is ambiguous, and because the Maine Human

Rights Commission has reasonably interpreted section 4553(7–A) as requiring proof of a substantial limitation, we should defer to that interpretation. Accordingly, I respectfully dissent.

[¶ 35] We are called upon in this case to interpret 5 M.R.S. § 4553(7–A), which defines a "physical or mental disability" within the context of the MHRA as:

> any disability, infirmity, malformation, disfigurement, congenital defect or mental condition caused by bodily injury, accident, disease, birth defect, environmental conditions or illness, and includes the physical or mental condition of a person that constitutes a substantial disability as determined by a physician or, in the case of mental disability, by a psychiatrist or psychologist, as well as any other health or sensory impairment that requires special education, vocational rehabilitation or related services.

5 M.R.S. § 4553(7–A). "When reviewing the construction of a statute, we look first to the plain meaning of the statutory language as a means of effecting the legislative intent." *Home Builders Ass'n of Me., Inc. v. Town of Eliot*, 2000 ME 82, ¶ 4, 750 A.2d 566, 569 (alterations and quotation marks omitted). If the language of the statute is ambiguous, however, "we look beyond it to the legislative history or other external indicia of legislative intent." *Irving Pulp & Paper, Ltd. v. State Tax Assessor*, 2005 ME 96, ¶ 8, 879 A.2d 15, 17–18. "Ambiguous language is described as language that is reasonably susceptible of different interpretations." *Competitive Energy Servs. LLC v. Pub. Utils. Comm'n*, 2003 ME 12, ¶ 15, 818 A.2d 1039, 1046 (quotation marks omitted). Further, "[t]he meaning of a statute must be construed in light of the subject matter, purpose of the statute, and the consequences of a particular interpretation." *Home*

*Builders Ass'n,* 2000 ME 82, ¶ 14, 750 A.2d at 571–72 (quotation marks omitted).

[¶ 36] I would conclude that the statute is ambiguous. Section 4553(7–A) states that the definition of physical disability "includes" a person's physical condition "that constitutes a substantial disability as determined by a physician." If that language of the statute describing a "substantial disability" is not part of the required definition of physical disability, then the "substantial disability" phrase of the statute is rendered without meaning. "In the construction of a statute, nothing should be treated as surplusage, if a reasonable interpretation supplying meaning and force is possible." *Finks v. Me. State Highway Comm'n,* 328 A.2d 791, 799 (Me.1974). Moreover, it is not apparent from the language of section 4553(7–A), or any other section of the MHRA, what constitutes a "substantial disability," and whether the test of "substantial disability" is analogous to the ADA's test for substantial limitation of a major life activity.[3]

[¶ 37] Because, in my view, the definition of "physical or mental disability" in section 4553(7–A) is ambiguous, we should look beyond the plain language to determine its meaning. *See Irving Pulp & Paper,* 2005 ME 96, ¶ 8, 879 A.2d at 18. In doing so, we first examine the interpretation given section 4553(7–A) by the Maine Human Rights Commission.

[¶ 38] The Commission was established to administer the MHRA pursuant to 5 M.R.S. § 12004–G(15) (2005). *See* 5 M.R.S. § 4561. It is charged with investigating human rights violations and recommending measures to promote human rights within the State. 5 M.R.S. § 4566.

To that end, the Commission is also vested with the power to promulgate rules and regulations to effectuate the provisions of the MHRA. Specifically, section 4566(7) provides that the Commission has the power "[t]o adopt, amend and rescind rules and regulations to effectuate this Act, such adoption, amendment and rescission to be made in the manner provided by chapter 375, subchapter II."

[¶ 39] Among the rules adopted by the Commission to carry out the MHRA is Rule 3.02, which provides further definitions to accompany the MHRA. 11 C.M.R. 94 348 003–2 § 3.02 (1999). Included among these definitions is one for "physical or mental disability" which states: "An applicant or employee who has a 'physical or mental disability' means any person who has a physical or mental impairment which substantially limits one or more of such person's major life activities, has a record of such an impairment, or is regarded as having such an impairment." 11 C.M.R. 94 348 003–2 § 3.02(C)(1) (1999).

[¶ 40] We accord substantial deference to a Commission's interpretation within its expertise of a statute it administers: "When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive, is entitled to great deference ...." *Maritime Energy v. Fund Ins. Review Bd.,* 2001 ME 45, ¶ 7, 767 A.2d 812, 814 (quotation marks omitted). If, as in this case, the statute at issue is ambiguous, we review the agency's interpretation for "reasonableness" and must uphold that interpretation "unless the statute plainly compels a contrary result." *Competitive Energy Servs.,* 2003 ME 12, ¶ 15, 818 A.2d at 1046 (quotation marks omitted).

---

**3.** Our decision in *Rozanksi v. A–P–A Transport, Inc.,* 512 A.2d 335 (Me.1986), is not dispositive of the issues now before us. Our opinion in *Rozanski* never considered or addressed either of the issues presented to us by the federal court, and therefore did not "necessarily reject[ ] the 'substantially limits' qualification to the definition of disability," as the Court states. *Supra* ¶ 21.

[¶ 41] Given the ambiguity in section 4553(7–A), the Commission's definition of "physical or mental disability" in Rule 3.02 is reasonable, and section 4553(7–A) does not plainly compel a contrary result. Accordingly, in giving the Commission the deference due to it in the interpretation of the MHRA, I would conclude that section 4553(7–A) requires a showing of a substantial limitation on a major life activity consistent with Rule 3.02.

[¶ 42] Moreover, the reasonableness of the Commission's interpretation of section 4553(7–A) is apparent when compared to the construction adopted by the Court. To read section 4553(7–A) as broadly as the Court does renders that section virtually unlimited in scope, and makes it applicable to even the most minor of disabilities, infirmities, malformations, disfigurements, congenital defects, mental conditions, or illnesses, etc. The Legislature is unlikely to have intended that the statute make our courts accessible on the grounds of disability discrimination when alleged ailments are so very minor or trivial. *See Home Builders Ass'n,* 2000 ME 82, ¶ 14, 750 A.2d at 571–72 (requiring that we interpret a statute consistently with its intended consequences).

[¶ 43] Furthermore, I do not agree that the Legislature rejected the substantial limitation language in both the Rehabilitation Act and the ADA by failing to specifically adopt it when amending section 4553(7–A) in 1991. Rather, it is more likely that the Legislature recognized that Rule 3.02, adopted in 1985, after the effective dates of both the Rehabilitation Act and the ADA, but before 1991, contained clear substantial limitation language and that there was no need to incorporate the same language into section 4553(7–A) itself.

[¶ 44] Indeed, in my view, the Legislature has acquiesced to the Commission's interpretation of section 4553(7–A). The law of acquiescence states:

It is a well accepted principle of statutory construction that when an administrative body has carried out a reasonable and practical interpretation of a statute and this has been called to the attention of the Legislature, the Legislature's failure to act to change the interpretation is evidence that the Legislature has acquiesced in the interpretation.

*Thompson v. Shaw's Supermarkets, Inc.,* 2004 ME 63, ¶ 7, 847 A.2d 406, 409 (quoting *In re Spring Valley Dev.,* 300 A.2d 736, 743 (Me.1973)). In this case, since the promulgation of Rule 3.02 defining physical disability in 1985, section 4572 of the MHRA alone has been amended at least six times, section 4553 eight times, and subsection 7–A itself has been amended once. In the twenty years since the promulgation of Rule 3.02, however, the Legislature has not clarified or altered in any way the definition of physical disability in section 4553(7–A) to indicate that Rule 3.02 is not a correct interpretation of the statute. I would conclude that the Legislature has acquiesced to the interpretation of section 4553(7–A) as promulgated by the Commission in Rule 3.02.

[¶ 45] Accordingly, because Rule 3.02, which requires proof of substantial limitation of a major life activity, is a reasonable and valid interpretation of section 4553(7–A), section 4553(7–A) does require that a plaintiff establish the element of substantial limitation of a major life activity in proving the existence of a physical or mental disability. I would therefore answer question # 1 in the affirmative and question # 2 in the negative.

LEVY, J., with whom SAUFLEY, C.J., joins, dissenting.

[¶ 46] Section 4553(7–A) is not a model of legislative clarity. It consists of a sin-

gle, seventy-seven word run-on sentence that contains thirteen commas and employs the disjunctive "or" eight times.

[¶ 47] The Court interprets this challenging statute categorically, finding within it three separate definitions of "physical or mental disability." It does so in the face of a sentence that does not contain any textual signals, such as numbers, letters, parentheses, semi-colons or other punctuation, that one might expect to find when a legislative body seeks to establish, in one sentence, three separate definitions for a single term.

[¶ 48] Contrary to the Court's view that the history of the adoption and interpretation of the Maine Human Rights Act's definition of disability "leaves no ambiguity for interpretation," *supra* ¶ 28, I believe the opposite is true. The interpretive history recounted by the Court sheds more fog than light on its subject, except, perhaps, in one respect: There is no historical evidence that the Legislature intended to create not one but three separate definitions for the term "physical or mental disability."

[¶ 49] As more fully explained by Justice Clifford, section 4553(7–A) is an ambiguous statute. Accordingly, we should defer to the expertise of the Maine Human Rights Commission and respect the interpretive rule it has employed for more than twenty years to protect persons with disabilities from employment discrimination.