STATE OF MAINE                           SUPERIOR COURT
PENOBSCOT, SS.                           CIVIL ACTION
                                         DOCKET NO CV-07-154
                                         WRA — PEN- 2/10/2010

MARY WALSH,

            Plaintiff,
        v.                               ORDER
TOWN OF MILLINOCKET,

            Defendant.


Hearing was held and memoranda filed concerning potential equitable remedies in this case by September 25, 2009. The plaintiff was present and represented by counsel, Arthur Greif, Esq., while the defendant was present and represented by counsel, Melissa Hewey, Esq. On August 20, 2009 the jury that had been selected to decide this whistleblower case returned a verdict for the plaintiff, awarding her compensatory damages in the amount of $30,000. In this Order, the Court will address the issues of reinstatement, back pay, and front pay.

After losing her job with the town of Millinocket in July of 2005 as a result of the activities that were the subject of this lawsuit, Ms. Walsh was unable to find substitute employment for the remainder of that year. Had she continued working for Millinocket as recreation director, she would have earned $29,702.18 that year, but in fact earned only $17,681 for the entire year. In January of 2006, she began working for Microdyne in Orono, Maine where she earned $17,546 for the entire year. While at Microdyne, she was promoted and then demoted, in title only, with no decrease in pay. Because of her lengthy commute, 60 miles each way, and her fear of a moose collision, Ms. Walsh terminated her employment at Microdyne in June of 2007 and began working at an Econo Lodge motel in Millinocket in June of that year. Her total income for 2007 was $15,342. In September of 2007, she moved to Lincoln, Maine to reside with her

boyfriend, but continued to commute to her work at the motel in Millinocket where she continued to be employed until October of 2008 when she ceased working at that location for reasons that are not clear. She then began to seek work in the Lincoln area and has been working at Daigle Oil Co. since June 4, 2009 as a cashier/pump attendant, having averaged three employment inquiries each week until being hired at Daigle. In 2008 she earned $4,624 at Econo Lodge and Daigle Oil and in 2009 her income for the first nine months was $3,353.

Reinstatement

The major objective of the equitable remedy in a case such as this is to make whole the victim of unlawful employment activity and the choice of remedy is vested in the discretion of the Court. *Whitney v. Wal-mart Stores, Inc.*, 2006 ME 37, ¶ 15, 895 A.2d 309, 313. The Court should not order reinstatement if it is inappropriate, such as when there is no position available or the employer-employee relationship is pervaded by hostility. *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 952 (7th Cir. 1998). The Court is not ordering reinstatement in this case because the position to which the plaintiff would be reinstated no longer exists. The recreation department outsourcing contract with East Millinocket was still in effect at the time of trial in this case and the court assumes, with no evidence to the contrary, that it still remains in effect. Although it would be possible to order reinstatement at the expiration of the present contract, the Court will not do so because it is predictable that the employer-employee relationship in this small workplace will remain hostile. Instead, the court will consider front pay and now turns to the issues of back pay and front pay.

Back Pay – Front Pay

The parties agree that the plaintiff is entitled to back pay, but differ as to amount. Clearly, the amount to be awarded in back pay is to be reduced by the amount

actually earned during the relevant period or by whatever amount the plaintiff could have earned during that period. *Maine Human Rights Commission v. City of Auburn*, 425 A.2d 990, 999 (Me. 1981). The burden is on the employer to prove facts to enable the court to determine the appropriate deduction.

First, the Court will address defendant's argument that the back pay claim should be cut off by the renewal of the shared services contract with east Millinocket and Milo in July of 2007. If this were considered a separate, independent action resulting in the elimination of Ms. Walsh's position, then back pay would cease with the elimination of the position, because a victim of such discrimination is not entitled to back pay if she would have lost her job notwithstanding the discrimination. *See Williams at 953*. Since the 2007 contract renewal was similar to a general ratification of the prior actions that resulted in plaintiff's loss of employment and does not constitute a new event that caused the elimination of the position, the Court does not view the event as one in which plaintiff would have lost her job notwithstanding the discrimination.

The Court is satisfied that the plaintiff diligently sought employment in 2005 after losing her position with the town. The Court also finds that employment at Microdyne was the highest paying employment that she could find in 2006, despite diligent efforts to locate higher paying employment closer to home. The fact that plaintiff drove 600 miles each week to this lower paying job indicates how difficult it was for her to find employment closer to Millinocket. The Court also does not fault her for resigning in 2007 primarily because of the long and expensive commute and also finds that becoming employed at the local Econo Lodge was a reasonable choice under the circumstances. The Court finds, however, that after moving in with her boyfriend in Lincoln later in 2007, plaintiff no longer made reasonable efforts to locate suitable employment because she unduly limited the scope of her search, which impaired her

ability to apply for reasonable employment opportunities. Having moved closer to the Bangor – Brewer – Orono – Old Town area, plaintiff should have made reasonable efforts to seek employment there yet there is scant evidence that she made a serious effort in that regard. The Court bases this conclusion on the lack of specificity in the plaintiff's testimony that she searched in this area in general, and the undisputed fact that in 2008 she failed to look in the employment section of the weekend edition of the only mass circulation newspaper in the area. As a result she was not aware of at least three advertised openings for municipal recreation administrators in that area and did not apply for those positions. It is the Court's belief that any serious search for employment in that part of the state would include perusal of the weekend Bangor Daily News. The Court is aware of the burden placed on the defendant in this regard by *Maine Human Rights Commission* v. *Department of Corrections*, 474 A.2d 860 (Me. 1984), but finds that there is a huge difference between expecting a person from Springvale to accept employment in Skowhegan and expecting a person from Lincoln to pursue employment in greater Bangor. Because her search for employment became extremely limited in 2008, the Court finds that from that point on plaintiff did not make reasonable efforts to find employment.

In computing back pay the Court finds that had plaintiff remained employed with Millinocket through 2007, she would have received a 3% increase, as she had in the past. The Court also finds that it is reasonable to supplement her earnings for the time she was working at Microdyne with a mileage adjustment. For 2005, plaintiff is entitled to $12,021. For 2006, the difference between actual and Millinocket earnings was $13,047, to be increased by mileage computed at the federal rate of $13,884, for a total of $26,931. For 2006, The Court will make an award for the entire year, but the mileage

component will only relate to 21 weeks because she only worked at Microdyne for that period of time. The award, then, is $16,169 plus $6,111.

Because the Court's findings with regard to mitigation also apply to front pay, The Court is not making a front pay award. Additionally, as a matter of equity, four years and seven months have transpired since the plaintiff was discharged by the Town and the Court concludes that the back pay award, if it were not stopped in 2008, would have approximated the benefit that plaintiff would have received had she been reinstated. The equitable remedy, therefore, is an award of $61,232.

The Entry Shall be:

Upon the jury's verdict as well as the Court's Order on equitable remedies, judgment is entered for the plaintiff in the amount $91,232 (consisting of $30,000 in non-pecuniary damages as awarded by the jury and back pay of $61,232 awarded by the Court), plus interest at the statutory rate and costs.

Dated: February 10, 2010

WILLIAM ANDERSON

JUSTICE, SUPERIOR COURT

MARY WALSH VS MILLINOCKET TOWN OF
UTN:AOCSsr  -2007-0070154                              CASE #:BANSC-CV-2007-00154
-----------------------------------------------------------------------------------

MARY WALSH _____    _____ PL _____
      GREIF, ARTHUR _____    _____
            82 COLUMBIA ST PO BOX 2339 BANGOR ME 04402-2339 _____

MILLINOCKET TOWN OF _____    _____ DEF _____
      HEWEY, MELISSA _____    _____
            84 MARGINAL WAY SUITE 600 PORTLAND ME 04101 _____