STATE OF MAINE                                              SUPERIOR COURT
PENOBSCOT, ss.                                             CIVIL ACTION
                                                          DOCKET NO. CV-09-201
                                                          WRA - PEN- 4/11/-011

JOHN DOE and JANE DOE,
as parents and next friend of
SUSAN DOE, and MAINE
HUMAN RIGHTS
COMMISSION,

              Plaintiffs,

     v.                                          **DECISION ON DEFENDANTS'**
                                                 **MOTION TO DISMISS**

KELLY CLENCHY, et al.,

              Defendants.


     The matter before the Court is the Defendants' M.R. Civ. P. 12(b)(6) Motion to

Dismiss the Plaintiffs' Complaint. Having reviewed the parties' respective filings and

having reflected upon the arguments presented, the Court denies the Defendants' motion

in part and grants the Defendants' motion in part.

                    BACKGROUND AND PROCEDURAL HISTORY

     Accepting the facts alleged in the Plaintiffs' Complaint as true, *Johnson v. Me.*

*Energy Recovery Co., Ltd. P'ship*, 2010 ME 52, ¶ 2, 997 A.2d 741, 743, the Court finds

that the following facts precipitated the filing of this action:

     Susan Doe was at all times relevant to this action a transgender student attending

Asa Adams Elementary School in Orono, Maine. (Compl.¶ 13.)[1] Prior to the 2007-2008

---

[1] It should be noted from the onset, as noted in Plaintiffs' Supplemental Memorandum in Opposition, that
Susan Doe was born biologically male, but has expressed herself and identified as a female from a very
young age. (Pl.s' Supp. Mem. in Opp. to Def.s' Mot. to Dismiss 1.) The parties do not dispute this fact
insofar as it was not included with specificity in the Complaint. This is the type of fact that is permissible to
import when considering the nuances of the Plaintiffs' claims and whether Susan Doe is entitled to relief

1

school year, Susan's parents met with administrative staff at the Asa Adams Elementary School to discuss how Susan would be addressed by school staff and what bathroom facilities she would be able to use during the school day. (*Id.* ¶ 14.) It was agreed at the meeting that staff would address Susan using a female pronoun, and most importantly for the purposes of this litigation, that Susan "would use the girls' bathroom unless other girls or their parents objected." (*Id.*) In early October 2007, a male student followed Susan into the girls' bathroom at Asa Adams Elementary. (*Id.* ¶ 15.) Local news outlets began reporting Susan's story shortly thereafter. (*Id.* ¶ 16.) On October 10, the Superintendent of the Orono School District, Kelly Clenchy, terminated Susan's access to the female restrooms while attending school, "[f]orcing [Susan] to use a staff bathroom, because of her sexual orientation." (*Id.* ¶ 17.)

Following Superintendent Clenchy's decision, Jane Doe contacted administrative staff at the Orono School Department and indicated her strong opposition to Superintendent Clenchy's position. (*Id.* ¶ 18.) John and Jane Doe later met with Superintendent Clenchy to see if the parties could come to some resolution concerning Susan's access to the girls' restroom facilities at Asa Adams Elementary. (*Id.* ¶ 19.) At the meeting, John and Jane Doe clearly indicated that they wanted Susan's access rights to the girls' bathroom restored. Superintendent Clenchy allegedly responded to the Does' request by saying, "I'm not going to do that." (*Id.*) Since the time of the October 2007 discussions between the Does and Superintendent Clenchy, Susan has not been allowed to use the girls' restroom facilities in Orono Schools. (*Id.* ¶ 20.)

---

under "any set of facts that might be proven in support of the claim." *Dragomir v. Spring Harbor Hosp.*, 2009 ME 51, ¶ 15, 970 A.2d 310, 314-15.

On April 10, 2010, Jane Doe filed a complaint with the Maine Human Rights Commission (MHRC) alleging that Superintendent Clenchy, along with the various other school district entities involved in this litigation, had violated the Maine Human Rights Act. On June 29, 2009, the MHRC unanimously found reasonable grounds to believe that the Defendants in this action—Superintendent Clenchy, the Orono School Department and School Union #87—had engaged in unlawful education and public accommodation discrimination by denying Susan access and use of the girls' restroom facilities based on her "sexual orientation." (*Id.* ¶ 23.) Following MHRC's findings, Susan Doe left Asa Adams Elementary school to continue her education elsewhere. (*Id.* ¶ 26.)

The Plaintiffs' Complaint mirrors the MHRC's April 2009 findings to the extent Count I seeks relief from unlawful discrimination in education on the basis of sexual orientation under 5 M.R.S. § 4602(4)(A) and Count II seeks relief from unlawful discrimination in public accommodations on the basis of sexual orientation under 5 M.R.S. § 4592(1). In Count III, the Plaintiff Susan Doe alleges a claim for intentional infliction of emotional distress based on certain disclosures Superintendent Clenchy made to various news outlets and interest groups concerning the factual circumstances of her experience at Asa Adams Elementary.

The Defendants filed a timely M.R. 12(b)(6) Motion to Dismiss on November 3, 2009. After the Court granted the Plaintiffs' motion to extend the time to provide a responsive filing, the Does' initial counsel, Attorney Eric M. Mehnert, Esq., filed a timely Motion in Opposition on December 9, 2009, and the MHRC filed its own Motion in Opposition that same day. The Defendants filed a reply memorandum on December 21, 2009. Attorney Mehnert then filed a notice of withdrawal on March 8, 2010, and the

3

Does subsequently retained Attorney Jodi L. Nofsinger, Esq. The Court also granted the Plaintiffs' motion to admit Attorney Jennifer L. Levi, Esq. *pro hac vice* to assist them in the prosecution of this lawsuit. The Court then granted the Does' request for leave to file a Supplemental Memorandum in Opposition. The Does filed the Supplemental Memorandum on June 10, 2010. While the Court had the Defendants' motion under advisement, it received a communication from MHRC Counsel John P. Gause indicating that the parties would be engaging in settlement negotiations and requested the Court to delay any decision on the Defendants' M.R. Civ. P. 12(b)(6) motion until after January 24, 2011. With the parties unable to reach a settlement, the Defendants' motion is now ripe for disposition.

## DISCUSSION

A Rule 12(b)(6) Motion to Dismiss tests the legal sufficiency of a complaint. *Johnson v. Me. Energy Recovery Co., Ltd. P'ship*, 2010 ME 52, ¶ 10, 997 A.2d 741, 744 (citation omitted). In addition to accepting the allegations in the Complaint as true, the Court is called upon to "examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (citation omitted).

### A. Maine Human Rights Act Discrimination Claims

The Maine Human Rights Act ("MHRA"), 5 M.R.S. § 4552 (2010) declares that it is the policy of the State to, among other things, "prevent discrimination in employment, housing or access to public accommodations on account of race, color, sex, sexual orientation, physical or mental disability, religion, ancestry or national origin; . . . and to prevent discrimination in education on account of sex, sexual orientation or

physical or mental disability." *Id.* The term "sexual orientation" is defined in the MHRA as "a person's actual or perceived heterosexuality, bisexuality, homosexuality or gender identity or expression." 5 M.R.S. § 4553 (9-C). The MHRA thus broadly prohibits discrimination based on a person's "gender identity or expression," in the context of both "denial of public accommodations" and "in education" *Id.*; *see also* 5 M.R.S. § 4602(4)(A) (prohibiting discrimination in education on the basis of a person's "sexual orientation"); 5 M.R.S. § 4592(1) (prohibiting denial of public accommodations on the basis of a person's "sexual orientation"). Based on the allegations in the Complaint, the Court can conclude that Plaintiff Susan Doe maintains both a female gender identity and a female gender expression, (Compl. ¶¶ 13-14), and that she was eventually prohibited from using the girls' bathroom facility at Asa Adams Elementary School, (Compl. ¶¶ 17-20).

The Court does not endeavor to distinguish between the unlawful discrimination in education claim and the unlawful denial of public accommodations claim alleged in the Complaint insofar as the analysis turns on the same basic legal question. Examining the facts alleged in the Complaint in the light most favorable to the Plaintiffs, it would be error for the Court to dismiss the MHRA claims at this early stage in the litigation given the language of 5 M.R.S. §§ 4552, 4602(4)(A), and 4592(1).[2]

Insofar as the Plaintiffs' denial of public accommodations claim under 5 M.R.S. § 4592(1) survives the Defendants' motion to dismiss, this type of claim could be construed not only to embrace a pure "denial of public accommodations" claim, but also a failure

---

[2] The Defendants submit that the MHRC has enacted a regulation that permits school authorities to separate bathroom use and other facilities "on the basis of sex." *See* 94-348 C.M.R. ch. 4, § 4.13. There is no record evidence to suggest—beyond that which possibly exists outside the parameters of the Complaint—that Superintendent Clenchy, or any other school administrative official acting on behalf of Asa Adams Elementary, permitted Susan to use the boys' bathroom facilities while attending school.

on the Defendants' part to reasonably accommodate Susan Doe's transgender status. To the extent the 15 M.R.S. 4592(1) claim is intended to include a claim that the Defendants were under an affirmative duty to accommodate Susan Doe's transgender status by permitting her access and use of the girls' bathroom at Asa Adams Elementary, that claim does not withstand analysis. Accepting as true the allegation that Asa Adams provided Susan with access to the "staff bathroom" after school administrators prohibited her from using the girls' restroom in early October 2007, (Compl. ¶ 17), perhaps lending credence to the Plaintiffs' position that the Defendants impermissibly discriminated[3] against Susan on the basis of her sexual orientation, this "accommodation" claim would impose upon Superintendent Clenchy and the various school entities defending this suit an obligation to accommodate Susan's transgender status by allowing her to continue using the girls' bathrooms consistent with her gender identity. Neither the language of the MHRA, the language of the MHRC's own internal regulations, nor prevailing case law interpreting the Civil Rights Act requires this type of accommodation.

The language of 5 M.R.S. § 4595(1)(A)-(E), requiring accommodation, is generally limited to those situations involving persons with some "physical or mental disability." *See* 5 M.R.S. § 4592(1)(B)-(E). By the express terms of 5 M.R.S. § 4553-A(3)(B) a "physical or mental disability does not include . . . any condition covered under section 4553, subsection 9-C." Consequently, the language of the MHRA itself forecloses any claim that Susan Doe's "sexual orientation" will operate to trigger the types of "disability" accommodations ordinarily required by 5 M.R.S. § 4592(1)(B)-(E). *See also*

---

[3] The MHRA unequivocally defines the term "discriminate" to mean "without limitation, segregate or separate." 5 M.R.S. § 4553(2).

*Freeman v. Realty Resources Hospitality, Inc.*, ANDSC-CV-09-199 at 2 (Me. Super Ct., And. Cty., May 27, 2010) (Brodrick, J.).

The Court is mindful that the MHRA does not appear to set forth a comprehensive list of all the types of accommodation that might potentially fall within the ambit of the statute. *See* 5 M.R.S. § 4592(1) ("For the purposes of this subsection, unlawful discrimination includes, *but is not limited to*[,]" the enumerated prohibitions contained in 5 M.R.S. § 4592(1)(A)-(E)) (emphasis added). Given that section 4592(1) could possibly be construed to embrace certain accommodations beyond what is stated in the text of the statute, it is the MHRC's contention that the MHRA obligated the Defendants to accommodate Susan's Doe's transgender status by continuing to allow her access and use of the girls' bathroom facilities at Asa Adams Elementary. For the reasons that follow, the Court finds this position untenable.

Relying primarily on the Law Court's disposition in *Maine Human Rights Comm'n v. United Paperworkers Int'l Union*, 383 A.2d 369 (Me. 1980), the MHRC argues that "[a]lthough the [MHRA] does not explicitly require the provision of a reasonable accommodation for gender identity, it is appropriate to impose such an obligation on a defendant who could otherwise engage in unlawful discrimination." (MHRC Mot. in Opp. to Def.'s Mot. to Dismiss 10.) On this point, the Court agrees with the Defendants' argument that *United Paperworkers* is inapposite to the analysis. The Law Court decided *United Paperworkers* on the grounds that the MHRA was specifically intended to cover religious discrimination in the workplace consistent with the Civil Rights Act. *United Paperworkers*, 383 A.2d at 375. Unlike *United Paperworkers*, there is no similar federal analog to the MHRA's provision prohibiting denial of public

7

accommodations on the basis of a person's "sexual orientation." Nor is the Court aware of any precedent—federal or state—implementing a rule that requires a place of public accommodation to reasonably accommodate a transgender person by specifically allowing that person to access and use the restroom facility of his or her "gender identity or expression." While the MHRA can certainly be said to contain language intended to *supplement* the protections afforded by the Civil Rights Act, *see United Paperworkers*, 383 A.2d at 375 (citation omitted), the MHRC has not taken the additional step of adopting a regulation or rule[4] implementing its interpretation of 5 M.R.S. § 4592. The MHRC would now have the Court accept as a matter of law a rule requiring schools, and perhaps *all* places of public accommodation in this state, to accommodate transgender persons by allowing them to use the bathroom facilities of their particular "gender identity or expression." As stated succinctly by the Defendants, "[t]here is . . . no basis to require accommodation under existing case law, regulation or statute." (Def.'s Mem. in Supp. of Mot. to Dis. 11.)

In reaching this result, the Court does not dismiss the whole of the public accommodations claim in the respect that the Defendants may have unlawfully discriminated against Susan Doe by "forcing" her to use a staff bathroom when she attended school. However, to the extent that Count II includes a claim that the Defendants had an affirmative obligation to accommodate Susan's transgender status by allowing her

---

[4] It bears mentioning that the MHRC has adopted a rule, consistent with its statutory power, imposing on employers, employment agencies, and labor organizations an obligation to "make reasonable accommodations in rules policies, practices, or services that apply directly or indirectly to gender identity or gender expression, unless the covered entity can demonstrate that the accommodations would impose an undue hardship on the conduct of business of the covered entity." *See* 94-348 C.M.R. ch. 3, § 3.12(F)(1). Even if this interpretation of the MHRA were extrapolated to cover the factual situation that precipitated the filing of this action, the MHRC's own interpretation of the MHRA in the employer/employee context does not necessarily dictate that a employer can only accommodate a transgender person by allowing that person to use the restroom facility of his or her gender identity in the workplace.

to continue using the girls' bathroom facilities—under circumstances where the Does and the MHRC now suggest that it was the only reasonable accommodation that could be made—that portion of Count II is dismissed.[5]

B. Intentional Infliction of Emotional Distress and Punitive Damages

In order to prove a claim for intentional infliction of emotional distress, the plaintiff must establish that:

> (1) the defendant engaged in intentional or reckless conduct that inflicted serious emotional distress or would be substantially certain to result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable; and (3) the plaintiff suffered serious emotional distress as a result of the defendant's conduct.

*Botka v. S.C. Noyes, Inc.*, 2003 ME 128, ¶ 17, 834 A.2d 947, 952 (citations omitted). Consistent with the standard that the Court must employ on the Defendants' M.R. Civ. P. 12(b)(6) motion, Susan Doe has at least stated facts in the body of the Complaint that would entitle her to relief on a theory of intentional infliction of emotional distress. Whether she failed to comply with notice provisions of the Maine Tort Claims Act, 14 M.R.S. 8107(1), or whether Superintendent Clenchy's alleged disclosures meet the "extreme or outrageous" threshold, necessarily call upon the Court to make findings that are outside the allegations in the Complaint. Plaintiff Susan Doe's prayer for punitive damages survives for the same reason. At this point, it is impossible to ascertain whether

---

[5] The Plaintiffs' initial Memorandum in Opposition filed by now withdrawn counsel, Attorney Mehnert, argues that "the better public policy is to read th[e] language of [5 M.R.S. § 4592] as an exemplar of what the statute is trying to require"—chiefly, that places of public accommodation should be required to accommodate transgender individuals by affording them access and use of the bathroom facilities of their gender identity or expression. If that were, in fact, the policy or the intent behind this particular provision of the MHRA, that policy would either be clear on the face of the statute or integrated into the anti-discrimination law by the MHRC. In the absence of both, it is not the role of this Court to weave its own policy determinations into issues better suited for resolution in the legislative and executive branches. *Whitney v. Wal-Mart Stores*, Inc., 2006 ME 37, ¶ 27, 895 A.2d 309, 315 (citation omitted).

Superintendent Clenchy acted with the express or implied malice when he allegedly disclosed matters involving Susan Doe to media outlets investigating the situation at Asa Adams Elementary. *See Tuttle v. Raymond*, 494 A.2d 1353, 1363 (Me. 1985).

The entry is:

1. Defendants' M.R. Civ. P. 12(b)(6) motion to dismiss with respect to Count I of the Plaintiffs' Complaint is **DENIED**.

2. Defendants' M.R. Civ. P. 12(b)(6) motion to dismiss with respect to Count II of the Plaintiffs' Complaint is **DENIED** in part and **GRANTED** in part.

3. Defendants' M.R. Civ. P. 12(b)(6) motion to dismiss with respect to Count III of the Plaintiffs' Complaint is **DENIED**

4. This order is incorporated into the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: April __/__, 2011

William R. Anderson
Justice, Superior Court

10

JOHN DOE   - PLAINTIFF

Attorney for: JOHN DOE
VISITING ATTORNEY  - RETAINED 03/29/2010
VISITING ATTORNEY

-
-  -

Attorney for: JOHN DOE
JODI NOFSINGER  - RETAINED 03/12/2010
BERMAN & SIMMONS
129 LISBON STREET
PO BOX 961
LEWISTON ME 04243-0961

Attorney for: JOHN DOE
ERIC MEHNERT  - WITHDRAWN 03/08/2010
HAWKES & MEHNERT
6 STATE STREET SUITE 600
BANGOR ME 04402

JANE DOE   - PLAINTIFF

Attorney for: JANE DOE
VISITING ATTORNEY  - RETAINED 03/29/2010
VISITING ATTORNEY

-
-  -

Attorney for: JANE DOE
JODI NOFSINGER  - RETAINED 03/12/2010
BERMAN & SIMMONS
129 LISBON STREET
PO BOX 961
LEWISTON ME 04243-0961

Attorney for: JANE DOE
ERIC MEHNERT  - WITHDRAWN 03/08/2010
HAWKES & MEHNERT
6 STATE STREET SUITE 600
BANGOR ME 04402

MAINE HUMAN RIGHTS COMMISSION OBO PARENT NEXT - PLAINTIFF OBO
51 STATE HOUSE STATION
AUGUSTA ME 04330
Attorney for: MAINE HUMAN RIGHTS COMMISSION OBO PARENT NEXT

HUMAN RIGHTS COMMISSION    John Gause, Esq.
51 STATE HOUSE STATION
AUGUSTA ME 04333-0051

SUSAN DOE   - MINOR PLAINTIFF
Attorney for: SUSAN DOE
JODI NOFSINGER - RETAINED 03/12/2010
BERMAN & SIMMONS

SUPERIOR COURT
PENOBSCOT, ss.
Docket No   BANSC-CV-2009-00201

DOCKET RECORD

129 LISBON STREET
PO BOX 961
LEWISTON ME 04243-0961

vs
KELLY CLENCHY INDIV SUPERINTENDENT   - DEFENDANT

Attorney for: KELLY CLENCHY INDIV SUPERINTENDENT
MELISSA HEWEY  - RETAINED 11/03/2009
DRUMMOND WOODSUM & MACMAHON
84 MARGINAL WAY SUITE 600
PORTLAND ME 04101

ORONO SCHOOL DEPARTMENT - DEFENDANT

Attorney for: ORONO SCHOOL DEPARTMENT
MELISSA HEWEY  - RETAINED 11/03/2009
DRUMMOND WOODSUM & MACMAHON
84 MARGINAL WAY SUITE 600
PORTLAND ME 04101

SCHOOL UNION EIGHTY SEVEN - DEFENDANT

Attorney for: SCHOOL UNION EIGHTY SEVEN
MELISSA HEWEY  - RETAINED 11/03/2009
DRUMMOND WOODSUM & MACMAHON
84 MARGINAL WAY SUITE 600
PORTLAND ME 04101

REGIONAL SCHOOL UNIT TWENTY SIX AKA RIVERSIDE - DEFENDANT
983 HUDSON RD
GLENBURN ME 04401
Attorney for: REGIONAL SCHOOL UNIT TWENTY SIX AKA RIVERSIDE
MELISSA HEWEY  - RETAINED 11/03/2009
DRUMMOND WOODSUM & MACMAHON
84 MARGINAL WAY SUITE 600
PORTLAND ME 04101


Filing Document: COMPLAINT                    Minor Case Type: CONSTITUTIONAL/CIVIL RIGHTS
Filing Date: 09/23/2009

**Docket Events:**
09/24/2009 FILING DOCUMENT - COMPLAINT FILED ON 09/23/2009

09/24/2009 Party(s):  JOHN DOE
            ATTORNEY - RETAINED ENTERED ON 09/23/2009
            Plaintiff's Attorney: ERIC MEHNERT

            Party(s):  JANE DOE
            ATTORNEY - RETAINED ENTERED ON 09/23/2009
            Plaintiff's Attorney: ERIC MEHNERT