2006 ME 38

**ESTATE OF John M. McPHEE.**

Supreme Judicial Court of Maine.

Argued: Nov. 16, 2005.

Decided: April 13, 2006.

Roger J. Katz, Keith R. Varner, Benjamin J. Smith (orally), Lipman, Katz & McKee, P.A., Augusta, for appellant.

Terry W. Calderwood (orally), Gibbons & Calderwood, L.L.P., Camden, for appellee.

Panel: CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

DANA, J.

[¶ 1] Sharon H. McPhee appeals from a summary judgment entered in the Penobscot County Probate Court (*Woodcock, J.*) in favor of Joanne McPhee, individually and as personal representative of the Estate of John M. McPhee, and the Maine State Retirement System (MSRS). Sharon contends that the court erred in finding the undisputed facts insufficient to support

her claim for breach of contract.[1] We agree and vacate the summary judgment with respect to that claim.

## I. BACKGROUND

[¶ 2] Sharon and John married in 1960. During their marriage, they jointly operated two corporations and John worked as a game warden. In 1985, John applied for retirement benefits through the MSRS, naming Sharon as his beneficiary and selecting a "Special Plan" under which his "surviving spouse" would receive death or survivor benefits.

[¶ 3] Sharon and John divorced in 1993. Paragraph five of the divorce judgment provided: "[Sharon] shall receive one-half of [John's MSRS] pension, including survivor benefits." A qualified domestic relations order (QDRO), incorporated into the divorce judgment, provided: "[Sharon] is awarded and shall receive from the [MSRS] ... death or survivor benefits ... if, as, and when such distributions are made as provided by the System's governing laws and rules." Following the divorce, Sharon and John retained equal shares in the corporations.

[¶ 4] Joanne and John married in 1996. In 2002, Sharon, John, and the two corporations entered into a buy-out agreement whereby, inter alia, Sharon conveyed her retained shares to the corporations, agreed to release John from various obligations, and received $223,598.50. The agreement provided that John's obligation under "paragraph five of the [d]ivorce [j]udgment ... to pay to Sharon one-half of his pension, including survivor benefits," would be excepted from the release. Sharon thereafter released John from all obligations except those created under the buy-out agreement and his "continuing obligation

... to pay [her] one-half of his pension including survivor benefits." John released Sharon from all obligations except those created under the buy-out agreement.

[¶ 5] John died in 2003, and the MSRS began disbursing survivor pension benefits to Joanne, his "surviving spouse," in monthly payments of at least $1182. Sharon initiated the instant proceeding claiming, inter alia, that Joanne, as personal representative of John's estate, had breached the buy-out agreement in failing to pay her an amount equal to the survivor benefits Joanne was receiving. Joanne moved for a summary judgment and the court granted her motion. Sharon brought this appeal.

## II. DISCUSSION

[¶ 6] In reviewing the grant of a summary judgment, "we view the evidence in the light most favorable to the party against whom the judgment has been granted, and review the trial court's decision for errors of law." *Abbott v. LaCourse*, 2005 ME 103, ¶ 8, 882 A.2d 253, 255 (quotation marks omitted). If we find a genuine issue of material fact or a legal error, we vacate the judgment. *Brawn v. Oral Surgery Assocs.*, 2003 ME 11, ¶ 15, 819 A.2d 1014, 1023.

[¶ 7] A contract is legally enforceable if it is founded upon a meeting of the minds, consideration, and mutuality of obligations. *Dom J. Moreau & Son, Inc. v. Fed. Pac. Elec. Co.*, 378 A.2d 151, 153 (Me.1977). When the terms of a legally enforceable contract are unambiguous, we interpret them as a matter of law. *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989, 993.

---

**1.** Sharon additionally contends that the court erred in determining that the undisputed facts were insufficient to support her claim against Joanne, as personal representative of John's estate, for breach of the divorce judgment and negligent misrepresentation.

■ [¶ 8] In 2002, when Sharon and John entered into the buy-out agreement, Joanne, John's soon-to-be "surviving spouse," was destined to receive his survivor pension benefits. Because in the buy-out agreement John unambiguously undertook to guarantee that Sharon would receive these survivor pension benefits, if there was consideration and mutuality of obligations, the buy-out agreement is legally enforceable. Consideration existed in, inter alia, Sharon's relinquishment of her interest in the corporations and release of John from various other obligations. Mutuality of obligations existed in the exchange of releases, stock, and cash.

[¶ 9] Inasmuch as its terms are unambiguous, the buy-out agreement may be interpreted as a matter of law. Regardless of any ambiguity between the divorce judgment and the QDRO,[2] the buy-out agreement requires John to fulfill his obligation under paragraph five of the divorce judgment. Joanne, as personal representative of John's estate, is, therefore, obligated to pay Sharon an amount equal to the amount she is presently receiving from the MSRS.

The entry is:

Summary judgment vacated with respect to the breach of contract claim. Remanded to the Probate Court for further proceedings consistent with this opinion.

---

2. Joanne contends that the QDRO amends paragraph five of the divorce judgment and, thereby, absolves John of his obligation to ensure that Sharon receive survivor benefits. While the divorce judgment unconditionally entitles Sharon to survivor benefits, the QDRO entitles her to such benefits only "if, as, and when" they are distributed pursuant to the MSRS's laws and rules. Because the buy-out agreement served to reaffirm the undertaking set forth in the original divorce judgment, we need not decide whether the provisions of the QDRO served to amend that undertaking. *See Greenwood v. Greenwood,* 2000 ME 37, ¶ 9, 746 A.2d 358, 360–61.