STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-07-60

SHARON MCPHEE,

      Petitioner

     v.

**DECISION AND ORDER**

MAINE STATE RETIREMENT
SYSTEM,

      Respondent

and

JOANNE MCPHEE,

      Intervenor

In front of the court is petitioner's M.R. Civ. P. 80C petition for judicial review of the final agency action of the Maine State Retirement System (MSRS or respondent). Joanne McPhee has intervened (Intervenor).

**Factual & Procedural Background:**

The facts are taken from respondent's final decision on September 14, 2007. (R. at 83.1-83.15.) John McPhee was a member of the respondent and received retirement benefits from the respondent. John married the petitioner in 1960. From 1962-1985, John was employed as a game warden pilot with the Department of Inland Fisheries and Wildlife. In 1985, John applied for service retirement benefits. Under the plan he selected, the beneficiary on death would be his "surviving spouse."

John and petitioner divorced in 1993. They entered into an agreement incorporated into their divorce decree by which petitioner would receive half of John's MSRS pension and any survivor benefits after John's death.

In December of 1993, respondent received petitioner and John's Qualified Domestic Relations Order (QDRO). As a result, respondent sent petitioner a letter informing her that because the rules concerning QDROs had recently been amended she would need to revise her QDRO, the QDRO was amended and received by respondent on March 2, 1994. It was not subsequently amended.

In September 1996, John married the intervenor, but John continued to maintain sporting camps incorporated and jointly owned by he and petitioner. During the spring of 2002, John and petitioner entered into a buyout agreement, by which petitioner would sell her stock in the sporting camps to John in exchange for cash and his MSRS pension. To wit, the agreement stated in part that John would continue "to pay Sharon one-half of his pension, including survivor benefits, through the Maine State Retirement System, as he is paying to her at present."

John died in a plane crash on May 4, 2003. Intervenor, at the time of John's death, owned half the stock in the sporting camps and was the personal representative of John's estate. On May 27, 2003 respondent sent intervenor a letter informing her that as John's "surviving spouse" she would receive a monthly benefit equal to one-half what John was receiving at the time of his death. Respondent began paying benefits to intervenor and halted from paying benefits it had been paying to petitioner. Respondent wrote petitioner's attorney informing him that under John's plan, his surviving spouse was entitled to one-half the amount being paid to John at the time of his death and intervenor was John's "surviving spouse."

In November of 2003, petitioner filed a petition in Probate Court against intervenor individually and as the personal representative of John's estate allegeing breach of the divorce agreement, breach of the buyout agreement, negligent misrepresentation, and unjust enrichment. Petitioner attempted to add MSRS to that suit, but the parties stipulated that it be dismissed. The case reached the Law Court. The Court held that the buyout agreement was enforceable and intervenor as personal representative of the estate was required to pay petitioner an amount equivalent to what intervenor received from MSRS.[1]

A bill changing the law related to QDROs was enacted and signed into law in April of 2006 and made 5 M.R.S.A. §§ 17054(4)[2] and 17059(6)(A)[3] retroactive to January 1, 1985. Petitioner's counsel wrote respondent and inquired if respondent was aware that this required it to disburse benefits to petitioner. The respondent responded by letter stating that it was correctly paying those benefits to intervenor.

## The Board's Decision

The Board begins by stating that judicial proceedings that took place regarding contractual obligations of John's estate (e.g. *Estate of John M. McPhee*, 2006 ME 38, 904 A.2d 401) have no effect on the determinations made by the Board, because the courts

---

[1] Notably, petitioner is yet to receive this payment from intervenor. Whether through the Law Court's opinion in the probate action or through the statutory amendments seeking enforcement of the QDRO by MSRS, petitioner is entitled to the benefits.

[2] **Qualified Domestic Relations Order.** The rights of a member, retiree, beneficiary or other payee under this part are subject to the rights of or assignment to an alternate payee under a Qualified Domestic Relations Order in accordance with § 17059.

[3] "If the order is determined to be a qualified domestic relations order, it is presumed to be in compliance with all requirements of this Part. The retirement system shall pay benefits in accordance with the order and shall give effect to the plain meaning of its terms notwithstanding any failure of the Order to cite or reference statutory or rule provisions. A beneficiary or recipient of a right or benefit provided for or awarded in a qualified domestic relations order may not be deprived of that right or benefit, or any part of that right or benefit, by a subsequent act or omission of the member, another claimant or beneficiary or the retirement system, notwithstanding any provision of law to the contrary or any policy or procedure the retirement system employs in the implementation of this Part."

had no jurisdiction over the Board's review under 5 M.R.S.A. § 17103(6). They cite 5 M.R.S.A. § 17059(2).[4]

The Board next states that paragraph 6 of the QDRO entitles petitioner to distribution of benefits "if, as, and when such distributions are made as provided by the System's governing laws and rules." The QDRO states that it "shall not be interpreted in any way to require the System to provide any type or form of benefit or any option not otherwise provided for under the System's governing laws and rules." *See* ¶ 6(a) of QDRO as it comports with 5 M.R.S.A. § 17059(4)(E). The QDRO provides that it shall not be interpreted "to require a designation of a particular person as the recepient of benefits in the event of the member's death." Thus the Board interprets this provision to require determination of the beneficiary to occur upon John's death. Further "notwithstanding the provisions of this Order, if Alternate payee is designated as beneficiary for any benefits payable by MSRS upon the death of members or retiree, then Alternate Payee shall receive such payment to which she is entitled by law as beneficiary." *See* ¶ 6(F) of QDRO as it comports with 5 M.R.S.A. §§ 17059(5)(B) and 17059(E).

The Board then decided that the plain meaning of the reservations of ¶ 6 of the QDRO foreclosed the petitioner's argument because it would require enforcement of the QDRO in violation of those statutory provisions with which it seeks to comport. Thus 5 M.R.S.A. §17852(5)(B) and MSRS Rule 130 became part of the Divorce Decree through the reservations of ¶6 and its deference to such laws and rules. Accordingly, 5 M.R.S.A. § 17852(5)(B) defines "surviving spouse" as "the person married to the [game warden] at the time of the officer's death." MSRS Rule 103 provides that "the benefit

---

[4] "The retirement system may not be made a party to a divorce or other domestic relations action in which an alternate payee's right to receive all or a potion of the benefits payable to a member or retiree under the retirement system is created or established."

amount paid to the survivor will be that required under the option elected by the retiree at retirement, as though no qualified domestic relations order had existed."

The Board then addressed the remaining question whether the amendments to 5 M.R.S.A. §§ 17054(1)(4) and 17059(6)(A) via Chapter 560 altered the above result. Relying on *South Portland Civil Service Commission v. City of South Portland*, A.2d 599, 601 (Me. 1995), the Board determined that the general terms of Chapter 560's amendments must give way to the more specific terms of 5 M.R.S.A. § 17852(5)(B). *Id.* ("A more specific statute will be given precedence over a more general one, regardless of their temporal sequence.")

The Board further reasoned that if the Chapter 560 Amendments were controlling, § 17852(5)(B) would be surplusage or impliedly repealed, however that result would be impermissible "if a reasonable construction supplying meaning and force is otherwise possible." *Oppenheim v. Hutchinson*, 2007 ME 73, ¶ 9, 926 A.2d 177, 180-81. Additionally, implied repeal is not favored unless the statutes are completely repugnant to one another and the repealing statute fully covers the subject matter of the repealed statute. *Fleet National Bank v. Liberty*, 2004 ME 36, ¶ 9, 845 A.2d 1183, 1185.

The Board also decided that if, as urged by petitioner, the QDRO provisions are read as inconsistent with § 17852(5)(B) they must give way to the statute, citing *Kennedy v. MSRS*, KEN-CV-1995-495 (Me. Super. Ct., Ken. Cty., July 30, 1998) (Alexander, J.)

Finally the Board decided that even if the Chapter 560 amendments controlled the case, petitioner's argument is unavailing. The Board reasoned that as amended § 17059(6)(A) purportedly creates a presumption that the QDRO complies with the MSRS statutes, the presumption is rebutted by statutes contradicting the petitioner's reading of the QDRO. *E.g.* 5 M.R.S.A. §§ 17059(4)(E), 17059(5)(B), 17059(5)(E), and 17852(5).

Further, the Board points out that the QDRO was executed as amended in 1994 and §17852(5), the provision allowing for transfer of spousal benefits to a person other than the person to whom the member is legally married at the time of death, was not enacted until 1997, the QDRO lacked legal authority for a transfer of benefits.

## Discussion:

### Whether the Legislature's amendment of 5 M.R.S.A. §§ 17054(4) and 17059(6)(A) plainly compels a contrary result to that reached by the Board

"When the dispute involves an agency's interpretation of a statute administered by it, the agency's interpretation, although not conclusive on the Court, is accorded great deference and will be upheld unless the statute plainly compels a contrary result." *Maine Bankers Ass'n*, 684 A.2d at 1306 (citing *Centamore v. Department of Human Services*, 664 A.2d 369, 370 (Me. 1995)). However if the statute is unambiguous the court does not defer to the agency in divining the meaning of the statute, "[i]f and only if, a statute is ambiguous do we look to extrinsic sources like agency interpretation or legislative history to assist in interpreting the ambiguous terms." *Whitney v. Wal-Mart Stores*, Inc., 2006 ME 37, ¶ 22, 895 A.2d 309, 315. Accordingly, "[a]n agency interpretation is invalid if it is contrary to the plain meaning of the statute." *Id.* In determining whether a statute is ambiguous, the court must note that the ambiguity cannot be created by the agency where no ambiguity otherwise exists. *Id.*

Petitioner argues that the retroactive application of the Chapter 560 amendments should be plainly read to require a plain reading of the QDRO that entitles her to distribution of benefits. § 17059(2)(6)(A) provides:

> If the order is determined to be a qualified domestic relations order, it is presumed to be in compliance with all requirements of this Part. The retirement system shall pay benefits in accordance with the order and *shall give effect to the*

*plain meaning of its terms notwithstanding any failure of the Order to cite or reference statutory or rule provisions.* A beneficiary or recipient of a right or benefit provided for or awarded in a qualified domestic relations order *may not be deprived* of that right or benefit, or any part of that right or benefit, *by a subsequent act or omission of the member, another claimant* or beneficiary or the retirement system, *notwithstanding any provision of law to the contrary or any policy or procedure the retirement system employs in the implementation of this Part.* (emphasis added as suggested by petitioner's brief).

Petitioner argues first that giving precedence to the more specific statute would favor the Chapter 560 amendments over § 17852(5), because they were enacted to specifically apply to her situation. In doing so she refers to the legislative history of the amendments and their direct correlation to the case.

Further, she argues that reference to § 17582(5) is a red herring, because it does not deal with the fundamental alteration to the statute given enactment of Chapter 560. She also argues that giving the amendments effect would not render § 17852(5) surplus, it would only require the MSRS not to overlook the mandates of a divorce court in deciding benefits in the event a QDRO exists.

The court agrees with the petitioner and is especially convinced because interpretation of the § 17852(5) in the rigid and overwhelming manner sought by respondent would render the legislature's amendment of § 17059(2)(6)(A) a nullity. In no instance would a QDRO be able to effect the determination of the intended beneficiary by MSRS, who would ignore the QDRO's plain meaning and intent in favor of § 17852(5). This would destroy the legislature's plain language requiring that acts or omissions by MSRS not deprive the intended beneficiary of a QDRO of the benefits provided by the QDRO. Conversely § 17852(5) would retain its full effect in all cases where it is not impacted by the plain meaning and intent of a QDRO. The court sees no conflict between § 17059(2)(6)(A) and § 17852(5). "[A] court should not read a statute to conflict with another when an alternative, reasonable interpretation yields harmony."

*Butler v. Killoran*, 1998 ME 147, ¶ 8, 714 A.2d 129, 132.[5]  The statutes as amended plainly contemplate petitioner as beneficiary of the assets.

The Intervenor's presence in this case draws out multiple other questions.

**Whether petitioner, by not timely petitioning for judicial review of the 2003 MSRS decision, failed to preserve any claim to survivor benefits**

The initial decision that retirement benefits would be paid to intervenor rather than petitioner was made by letter July 15, 2003.  Rather than petition for judicial review of this decision petitioner filed a claim in Probate Court.  By failure to petition for judicial review, intervenor argues petitioner waived her right to review.  *See* 5 M.R.S.A. § 17451(1)(A); *see also Levesque v. Inhabitants of the Town of Eliot*, 448 A.2d 876, 878 (Me. 1982).

Petitioner first argues that Intervenor has no standing to bring the defense of failure to exhaust administrative remedies, that it alone belongs to MSRS.  Even if she does have standing, petitioner argues that the letter deciding benefits was not a final agency action because Lynn Pease (who wrote the letter) was a "Survivor Services Supervisor" and not the "Executive Director of the MSRS or his/her designee."  MSRS Rules Chapter 702(3)(B).  Additionally, that letter never adequately through 5 M.R.S.A. § 17451 apprised petitioner of her right to appeal.  The only truly final decision of the

---

[5] While the court sees no disharmony based on this interpretation, both parties argue that the statutory provision they look at is more specific. "Where one statute deals with the subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears the legislature intended to make the general act controlling." *Id.* ¶ 11, 714 A.2d at 133-34 (quoting 2B Sutherland, Statutory Construction § 51.05 at 174 (1992 & Supp. 1998)). Petitioner argues that because § 17059(2)(6)(A) deals with QDROs and § 17582(5) deals with all instances of determining the "surviving spouse" as beneficiary § 17059(2)(6)(A) is more specific. Respondent argues on the other hand that because § 17852(5) deals with "Inland Fisheries and Wildlife Officers" and § 17059(2)(6)(A) deals broadly with all members, § 17852(5) is more specific. Because the court determines there's a harmonious interpretation this debate is merely academic. However the court believes the legislature's intent was to make the QDRO provisions applicable regardless of the type of MSRS member involved. And for purposes of the interpretation involved in this case the operative specificity is to scenarios dealing with QDROs and not the type of MSRS member involved.

Board came on July 25, 2006, from which petitioner petitioned for judicial review. Petitioner also bases her petition greatly on new legislation which created a new right thus resulting in the final agency action of July 25, 2006. All of these arguments are correct, petitioner is entitled to this petition.

***Whether petitioner's claim is barred by the doctrines of collateral estoppel and/or res judicata.***

Intervenor argues that the petitioner's claim is barred based on both issue and claim preclusion by the Law Court's final disposition of the Probate Court matter in *Estate of John McPhee*. Claim preclusion bars a claim when "the same parties or their privies are involved in both actions, there is a final judgment in the first action, and 'the matters presented for decision in the second action were, or might have been litigated in the first action.'" *Draus v. Town of Holden*, 1999 ME 51, ¶ 6, 726 A.2d 1257, 1259. MSRS was voluntarily dismissed from the Probate Court action because that court lacked jurisdiction over the MSRS decision, thus it was not involved and claim preclusion does not apply. Further, issue preclusion does not apply because issues of statutory interpretation of a statute not yet amended during prior litigation could not possibly have been litigated, unless the Law Court has come into possession of a magical crystal ball, of this the court is not aware.

The entry is

> The decision of the respondent is REVERSED and REMANDED to MSRS for action consistent with this decision.

May _8_, 2008

Justice Joseph Jabar

| Date Filed | 9/24/07 | Kennebec | Docket No. | AP-07-60 |
|---|---|---|---|---|

County

Action    Petition For Review
                  80C

**J. JABAR**

| Sharon McPhee | vs. | Maine State Retirement System and Joanne McPhee, Intervenor |
|---|---|---|

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Benjamin J. Smith, Esq.<br>Lipman, Katz & McKee<br>PO Box 1051 / 227 Water Street<br>Augusta, ME  04332-1051 | Christopher L. Mann, AAG<br>6 State House Station<br>Augusta Maine  04333-0006<br><br>Terry Calderwood, Esq.<br>PO Box 616<br>Camden, Maine  04843 |

| Date of Entry | |
|---|---|
| 9/24/07 | Petition For Review, filed.  s/Smith, Esq. |
| 10/11/07 | Letter entering appearance, filed. s/Christopher Mann, AAG<br>Letter opposing the petition for review, filed. s/Mann, AAG |
| 10/12/07 | 10/11/07: Written Appearance and Intervenor's Position Petition for Review of Final Agency action-Intervenor, Joanne McPhee. filed by T Caldewood.<br>Certificate of Service  served a copy of Written Appearance and Podiyion to Petition for Review of Final Agency Action upon Sharon McPhee, Petitioner, and upon the Maine State Retirementy System (MSRS), filed ;by T.Calderwood |
| 10/16/07 | Affidvit of Service, served on Maine State Retirement System, Office of the Attorney and Joanne McPhee on 9/25/07. (9/25/07) |
| 10/23/07 | Certificate of Administrative Record, filed. s/Gail Drake Wright, Exec. Dir. **( in vault)** |
| ------ | Notice and Briefing Schedule mailed to attys. of record. |
| 12/4/07 | Petitioner's Brief, filed. s/Smith, Esq. |
| 12/20/07 | Brief of Intervenor, Joanne McPhee, filed. s/Calerwood, Esq. |
| 12/31/07 | Petitioner's Motion to Enlarge/Consolidate Deadlines, filed. s/Smith, Esq. Proposed Order, filed.<br><br>Respondent's Brief, filed. s/Mann, AAG |
| 1/15/08 | Petitioner's Reply Brief, filed. s/Smith, Esq. |

Notice of setting for ___4/8/08___

sent to attorneys of record.

| Date of Entry | Docket No. |
|---|---|
| 4/10/08 | Oral arguments held with the Hon. Justice Joseph Jabar, presiding. Keith Varner, Esq. for the Petitioner. Kerrie Karney, AAG for the Respondent and Terrance Calderwood, Esq. for the Intervenor. Oral arguments made to the court. Court to take matter <u>undervisement</u>. |
| 5/8/08 | DECISON AND ORDER, Jabar, J. The decision of the respondent is REVERSED and REMANDED to MSRS for action consistent with this decision. Copies mailed to attys. of record. |